## Courtenay Barber, Appellant, v. General Automotive Corporation, Appellee.

### Gen. No. 30,843.

1. NEGOTIABLE INSTRUMENTS—*admissibility of evidence as to equities between original parties, in action by assignee holding note as collateral.* In an action upon a corporate note held by plaintiff as security collateral to an indebtedness of the payees to plaintiff, it was error to exclude testimony that at a meeting of the defendant's directors whereat the resolution authorizing the making of the note was adopted, the payees stated that they wished the note given to assure performance by the corporation of its undertaking to discharge a certain presently due obligation of the payees incurred on the corporation's behalf, and that they

would not negotiate the note so given but would return it to the corporation upon the performance of its undertaking.

2. NEGOTIABLE INSTRUMENTS—*weight of evidence as to equities between original parties, in action by assignee holding note as collateral.* In an action upon a corporate note held by plaintiff as security collateral to an indebtedness of the payees to plaintiff, testimony of an officer of defendant, the maker, that at the time the note was given the payees were heavily indebted to defendant, which was in consequence in imminent danger of failure, and that the note was given to induce the payees to procure funds for the relief of defendant by placing a mortgage upon property held by them, with the understanding that the payees would not negotiate such note but would hold it as security for the performance of defendant's agreement to pay such mortgage debt when it became due, held not "so ridiculous that it deserves no credence whatever," the necessities of the defendant serving to explain any possible want of prudence in its undertaking.

3. NEGOTIABLE INSTRUMENTS—*status of one holding notes as collateral, after payment of secured debt, under agreement authorizing continued holding and application of payments to meet specified contingent obligations.* Where after the payees of corporate notes had assigned them to plaintiff as security collateral to their own notes to plaintiff, the plaintiff agreed to surrender the secured notes to payees as part of the consideration for the transfer by payees of certain property to plaintiff, and in anticipation of the performance of such agreement the parties further agreed that plaintiff should retain such corporate notes and credit any payments by the maker thereon against certain contingent obligations of the payees to plaintiff, plaintiff did not, after the surrender of the secured notes as aforesaid, hold such corporate notes as security for the contingent obligations mentioned, there being no proof that any of such liabilities had become absolute, but the effect of such further agreement was to constitute plaintiff the agent of the payees for application of any payments upon the corporate notes in accordance with such agreement.

4. NEGOTIABLE INSTRUMENTS—*defenses available against one holding notes as agent of payees for application of payments.* One who holds notes, by virtue of an agreement with the payees thereof, as their agent for the application of payments thereon in accordance with the terms of such agreement, holds them subject to the same defenses available in a suit brought by the payees themselves.

5. NEGOTIABLE INSTRUMENTS—*defenses available against one holding note as collateral security.* One who has taken a note as collateral security for a debt which remains unpaid, holds it free

from any equities between the original parties of which he has no notice, but only to the extent of the secured indebtedness.

6. NEGOTIABLE INSTRUMENTS—*defenses available against one holding note as collateral security.* One who has taken a note as collateral security for a debt holds it subject to any equities between the original parties of which he has notice.

7. NEGOTIABLE INSTRUMENTS—*defenses available against one holding note as collateral security after payment of secured debt.* One who has taken a note as collateral security for a debt holds such note, after the payment of the debt thereby secured, subject to all the equities existing between the original parties to the instrument, whether he has notice thereof or not.

8. NEGOTIABLE INSTRUMENTS—*sufficiency of evidence to support judgment for maker of notes in action by holder after payment of debt of payees secured thereby.* Where in an action upon notes assigned by the payees to plaintiff as security for the payment of their notes to him, the evidence showed that such secured notes had been paid, but there was no evidence in support of allegations of the existence of equities between the original parties to the collateral notes, it was error to give judgment for the defendant maker.

9. APPEAL AND ERROR—*propriety of striking brief improperly raising new issues where case determined on other matters properly raised.* The fact that a brief violates the rules of the Appellate Court by raising points not suggested below will not be deemed a ground for striking the brief where the same contains other matters, and the case is determined on review without reference to the points so raised.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Reversed and cause remanded. Opinion filed March 10, 1926. Rehearing denied April 12, 1926.

PAUL O'DONNELL, for appellant.

McELROY & HUDDLESTON, for appellee; ZANE, MORSE & NORMAN, of counsel.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

By this appeal the plaintiff seeks to reverse a judgment of the municipal court of Chicago, finding the

issues for the defendant and that the plaintiff take nothing by his suit and for costs to be paid by the plaintiff to the defendant. When the case was originally reached for trial the defendant did not appear and the plaintiff presented his evidence before a jury and the jury found the issues in his favor, and fixed his damages at the sum of $6,881.80, and judgment in his favor was entered for that amount. Within 30 days the defendant appeared and submitted a motion to vacate the judgment and the court opened up the judgment and gave the defendant leave to appear and defend, the judgment to stand as security. That judgment was vacated when the judgment appealed from was entered. After the original judgment had been opened, the demand for a jury trial, which had been submitted, was withdrawn and the issues between the parties were submitted to the trial court without a jury.

The plaintiff brought this action on the third of a series of three notes held by him. All of these notes were dated February 5, 1924. The note involved in the case at bar was due February 1, 1925, and was drawn to the order of "Harvey S. and Chas. A. Pardee," and indorsed by those two payees in blank. The other two notes, in this series of three, are the ones involved in cases Gen. Nos. 30,279 and 30,413, in which we are this day filing opinions.

In the case at bar the plaintiff was called to the witness stand by the defendant under section 33 of the Municipal Court Act [Cahill's St. ch. 37, ¶ 421], and he testified that he received the notes sued upon from the Pardees, on August 28, 1924, as collateral to an indebtedness of approximately $12,000 which they owed him for money he had advanced in payment of premiums they owed on certain life insurance policies, this indebtedness of the Pardees being covered by their promissory notes which the plaintiff also held. He further testified that after he received the note

sued upon, as collateral to the notes of the Pardees, the latter notes were returned to the Pardees in connection with their conveyance to him, by warranty deed, of certain property they owned in Highland Park, and that when he received this deed from them, and returned their notes to them, he also undertook to pay them a certain amount in cash. The defendant also called as a witness one Kingsley, an officer of the defendant corporation, and he testified to having a conversation with the plaintiff on August 23 or 24, 1924, referring primarily to the first of the three notes we have mentioned, which the plaintiff also held and which was due on August 1, 1924, explaining to Barber that the defendant was in very bad financial condition ''owing to the fact that the company had been mishandled and serious mistakes had been made and a lot of money had been drawn out by the Pardees * * *. I told him the Pardees owed the company a large sum of money which they had taken out, overdrawn.'' This witness then gave the substance of that conversation with the plaintiff, which was to the effect that with the money the Pardees had improperly withdrawn from the defendant company they had purchased their Highland Park property; that later the Pardees had put a mortgage of $25,000 on their property, the proceeds of which they had placed to the credit of the defendant company, and that the defendant had agreed to pay the mortgage notes given in connection with that loan, as they fell due, and in connection with that transaction the defendant company had given the Pardees these promissory notes sued upon by the plaintiff in cases Gen. Nos. 30,279, 30,413 and the case at bar, it being agreed by the Pardees that they would not negotiate those notes, but that contrary to their agreement they had negotiated them by indorsing them in blank and turning them over to the plaintiff as collateral security for notes of the Pardees, given to the plaintiff in connection with an

indebtedness on their part to him, as a result of his paying certain of their life insurance premiums. Kingsley further testified that the plaintiff asked him about the condition of the Highland Park property and that he told him there were certain mortgages against it; that the property stood in the name of the Pardees, and that some of the company's principal stockholders thought that the Pardees should turn the property over to the company, inasmuch as they had bought it with money they had taken out of the company's treasury and had, in fact, practically wrecked the company in so doing, and had been obliged to borrow $25,000 on a second mortgage on the property and turn the proceeds of it over to the company to keep it from failing. He further testified that the plaintiff asked him whether the company intended paying the note he then held, being the first of the series and the one sued upon in case Gen. No. 30,279, and he told him they did, but that they did not intend paying the remainder of them; and that he further told the plaintiff that the company intended to pay the money due on the mortgage to the mortgage company that had made the loan, so as to preserve the property for the company; that he told the plaintiff that the Pardees were indebted to the defendant company to the extent of over $100,000, for withdrawals they had made from the defendant company's treasury, charging such withdrawals to themselves as overdrafts. Certain evidence which was sought to be presented by this witness was ruled out on objection of the plaintiff, whereupon counsel for the defendant made an offer to show that at a meeting of the board of directors of the defendant company a resolution was adopted authorizing the execution of the notes from the defendant company to the Pardees, the latter being present at that meeting and stating that they desired these notes, covering the amount of the money they had received on their Highland Park property, so that they would be sure that the company

would pay these second mortgage notes as they became due; and that they further stated that they would hold the notes to be given them by the defendant company and not negotiate nor dispose of them; and that as the second mortgage notes were taken up by the company, they (the Pardees) would return the notes to be placed in their hands by the defendant corporation. In our opinion that evidence was competent and should have been admitted.

Counsel for the plaintiff argues in his brief that the foregoing testimony of the witness Kingsley "is so ridiculous that it deserves no credence whatsoever," and in this connection he asks why, under the circumstances given by this witness, "should the company issue any notes at all   *   *   *.  The fact that the company issued unconditional promises gives the lie to Mr. Kingsley in this regard." The testimony of this witness does not seem as unreasonable to us as counsel regards it. If the Pardees had improperly withdrawn upwards of $100,000 from the defendant company and with that money purchased the Highland Park property, and if this withdrawal put the defendant company in a precarious financial condition, so that it was about to fail, it would be quite natural for its officers to turn to the Pardees for assistance and inasmuch as the latter were in no position to turn back any of the money they had withdrawn, it would be expected that the officers of the company would insist that they borrow money, and put up their Highland Park property as security—in other words, put a second mortgage on that property. The testimony of Kingsley is to the effect that this was done in order to save the defendant from financial failure. It might well be that in order to accomplish that result the defendant would even be willing to agree with the Pardees that they would take up these mortgage notes as they fell due, if they were convinced that the Pardees could not do so themselves. And it is by no means incredible that

if the Pardees insisted, in order to insure them that this would be done, that the defendant give them its notes to match the mortgage notes, the company might be in such financial straits as to comply and give the Pardees such notes, upon their promise not to negotiate them and to return them as fast as the company took up the second mortgage notes. In other words, in order to save itself from financial failure, imminent at the moment, the defendant company might be glad to take the proceeds of the $25,000 mortgage notes and thus tide itself over, and agree to pay them when they came due later; and give their notes to the Pardees as a pledge to insure their doing so. It may be thought that this was an unwise thing for the defendant company to do, but, as already stated, we are of the opinion that it may not reasonably be said that the testimony to the effect that they did do it "is so ridiculous that it deserves no credence whatsoever."

In connection with its proof the defendant offered a memorandum of agreement between the plaintiff and the Pardees, in which the plaintiff agreed to purchase their Highland Park property for $58,500, subject to two second mortgages, the latter of which was the one which had been placed on the property by the Pardees in order to turn over the $25,000 to the defendant company. The amount which the plaintiff agreed to pay the Pardees for this property, in this memorandum, this amount representing the equity in the property, was $28,125, and the agreement provided that $12,000 of that amount was to be paid by the plaintiff to the Pardees "by the surrender and cancellation of notes of the sellers (the Pardees) now held by the purchaser (the plaintiff)." These notes were the ones on which the Pardees had given the plaintiff the note of the defendant, here sued upon, as collateral. This memorandum of agreement was dated September 30, 1924.

The defendant also offered in evidence another

agreement between the Pardees and the plaintiff, reciting that whereas the plaintiff held the notes of the defendant, drawn to the order of the Pardees, as collateral to secure the payment of certain notes of the Pardees to him, the latter amounting to $12,000, and "whereas the parties (the Pardees and the plaintiff) hereto, are about to enter into a contract covering the sale of certain premises in Highland Park" (being the document last above referred to) therefore, it was agreed that if that contract of purchase and sale was entered into and title conveyed to the plaintiff, it was understood and agreed that any amounts paid by the defendant on its notes held by the plaintiff "will be credited against and to rentals accruing to" the plaintiff from the property to be so conveyed, "and any amounts received from said notes in excess of said rentals  *  *  *  may be credited, at the option of" the plaintiff, against $58,500, at which price the Pardees "have the option of purchase of said real estate during the period of said lease," and whereas the Pardees had certain insurance premiums coming due in January, 1925, it was further agreed that the plaintiff was to "have the right to apply any moneys received on account of the notes of" the defendant to the payment of those life insurance premiums.  This agreement contained a further paragraph, which had a line drawn through it, providing that if the Pardees did not exercise their option to repurchase the Highland Park property the plaintiff should pay them the amount of money received from the defendant on those notes which the plaintiff held as collateral to the notes of the Pardees, less cost of cancellation and rental of the Highland Park property due from the Pardees to the plaintiff, and the life insurance premiums referred to in the agreement.

The defendant also introduced in evidence another agreement between the plaintiff and the Pardees, reciting that whereas those parties had entered into an

agreement providing for the sale of the Highland Park property, from the Pardees to the plaintiff, therefore, the plaintiff leased the said premises to the Pardees from October 1, 1924, to September 30, 1925, at a rental of $500 per month. And further, in this document the plaintiff agreed that he would sell the Highland Park property to the Pardees or their nominee, provided such option to buy was exercised by the Pardees on or before September 30, 1925, this sale to be at the price of $58,500, plus any rent unpaid at the time of the said purchase.

The defendant further introduced in evidence a warranty deed from the Pardees to the plaintiff, conveying their Highland Park property. All the foregoing documents were received in evidence.

The plaintiff then took the witness stand in rebuttal and admitted that he had a conversation with Kingsley about August 23 or 24, 1924; but his version of that conversation was different from that given by Kingsley, so far as it concerned the notes of the defendant sued upon by the plaintiff in the case at bar and the other cases above referred to. The plaintiff's testimony was that he asked Kingsley if the notes the defendant had given the Pardees would be paid when they fell due, and that Kingsley said they would, and that the plaintiff asked Kingsley whether these notes would be good collateral for the plaintiff to secure from the Pardees to secure their indebtedness to him, and that Kingsley said they would be. The plaintiff denied that Kingsley told him the Pardees were indebted to the defendant company, and he denied that Kingsley told him that the note in suit would not be paid if the plaintiff took it from the Pardees as collateral security. The plaintiff then testified that he secured the note here sued upon, as well as the note sued upon in case Gen. No. 30,413, a few days after that conversation with Kingsley.

By reference to the opinion we are filing this day

in case Gen. No. 30,413, it will be seen that this testimony of the plaintiff was in some respects materially different from that given by him on the trial of that case, and on the cross-examination of the plaintiff in the case at bar, his attention was called to that testimony given in the prior case, and he was asked whether or not be did not make certain answers, read to him from the record in that case, and he said he did not remember.

Following the testimony of the plaintiff, in rebuttal, Kingsley was again called to the stand by the defendant and denied the statements attributed to him by the plaintiff in his testimony in connection with the conversation had between these parties on August 23 or 24.

At the conclusion of this testimony the trial court found the issues for the defendant and entered judgment accordingly, which judgment the plaintiff seeks to reverse by this appeal. The remarks made by the trial court in giving his decision appear in the record. The court referred to the opposite versions of the conversation had between the plaintiff and Kingsley on the 23rd or 24th of August, this having to do with the issue of whether or not the plaintiff had notice, before receiving the note here sued upon, that certain equities existed in connection with that note, as between the defendant and the Pardees, but the court did not proceed to decide the case on that issue, but turned to the question of whether the principal indebtedness from the Pardees to the plaintiff, and represented by their notes to him, had been paid by them, the court referring in that connection to the case of *Gammon v. Huse,* 9 Ill. App. 557 [aff'd 100 Ill. 234], which case we have referred to in the opinion filed in case Gen. No. 30,279. The court then referred to the documents which the defendant had introduced in evidence, namely, the warranty deed conveying the Highland Park property from the Pardees to the plaintiff, and

the various agreements between those parties in connection with that transaction, and held that in his opinion those documents showed that the notes of the Pardees, held by the plaintiff, had been liquidated, and, therefore, that the plaintiff could not recover.

The plaintiff makes the further contention that even if it be held that the $12,000 notes of the Pardees, which he surrendered at the time they conveyed the Highland Park property to him, were liquidated, the agreements which he entered into with the Pardees at the time of that conveyance, whereby he leased the property to the Pardees for a year at a rental of $6,000 or $500 a month, and wherein the Pardees agreed that he might continue to hold the notes of the defendant, which they (the Pardees) had delivered to him as collateral, and wherein the plaintiff agreed to credit against the Highland Park property rental, which the Pardees agreed to pay, any amounts paid by the defendant to the plaintiff on its notes, and wherein the plaintiff also reserved the right to credit any amount so paid by the defendant to the plaintiff on its notes, over and above the amount of such rentals, to certain payments the Pardees would be called upon to make in 1925 for certain insurance premiums, and also against a purchase price of $58,500, at which the plaintiff agreed to resell the Highland Park property to the Pardees—nevertheless these agreements left him (the plaintiff) in possession of the defendant's notes as collateral to secure the payment of these further obligations of the Pardees for the rental of the Highland Park property; for the insurance premiums and for the price at which they had an option to rebuy the property. In our opinion this contention is untenable.

At the time the parties entered into their agreement wherein the Pardees agreed that any payments made by the defendant on its notes which were in the possession of the plaintiff, could be credited by the

plaintiff against the rent referred to, and the insurance premiums and the purchase price at which the Pardees were to have an option to repurchase the Highland Park property, none of those obligations were due. In fact they were not even in existence at that time, for that agreement recited that the parties to it "were *about to* enter into a contract" covering the sale of the Highland Park property, from the Pardees to the plaintiff, and of course, the lease back to the Pardees from the plaintiff could not be entered into until the warranty deed had been delivered and, therefore, the Pardees did not even enter into an obligation to pay this rent, or acquire the option to repurchase the property, until after the parties had entered into this agreement, under which the plaintiff now claims he acquired a continuing right to hold these notes of the defendant, among them the one in suit in the case at bar, as collateral security for these other debts. Moreover, it does not appear whether any rent ever accrued under the lease, or whether the Pardees ever exercised the option to repurchase the Highland Park property or attempted to, nor does it appear whether the insurance premiums that were to fall due in January, 1925, ever fell due. So far as this record shows, the policies on which these premiums were to fall due may have been canceled. In our opinion the most that that contract of September 30, 1924, between the plaintiff and the Pardees, accomplished was to constitute the plaintiff the agent of the Pardees, to apply such payments as the defendant might make on its notes to the plaintiff, in the manner designated in that agreement. In that situation the notes would be subject to the same defenses as against the plaintiff as they would be in a suit brought by the Pardees. In our opinion there is much in the record to support the contention of the defendant that this action, as well as those brought on the other notes, was an attempt to collect the amount of the notes sued upon from the

defendant, without having to encounter the equities that the defendant would clearly have been in a position to set up in case the notes were sued upon by the real owners, the Pardees.

One who has taken a note as collateral security for a debt which remains unpaid holds it free from any equities existing between the original parties of which he had no notice, but only to the extent of the original indebtedness. He would, of course, hold it subject to any equities of which he had notice. But where the debt on which the collateral note was taken as security has been paid, the question of whether the holder had notice of any equities existing between the original parties to the collateral note becomes entirely immaterial, for in such case the holder retains the collateral note subject to all the equities existing between the original parties, whether he has notice of them or not.

Such being the law, several possible issues of fact are involved in all three of these cases. First, have the notes of the Pardees, held by Barber, been paid? In our opinion the trial court, in the case at bar, properly found that they had been. But it would not necessarily follow, as the trial court held, that Barber could not recover against the defendant on the note here sued upon. The original notes of the Pardees, held by Barber, having been paid, the question of whether he took these collateral notes on which he is now suing, with notice of any equities between the original parties, is not material. He holds the collateral notes subject to any such equities as exist between the defendant and the Pardees, whether he had notice of them or not. But the issue of fact still to be determined is, do such equities, in fact, exist? If they do not the plaintiff may recover against the maker of the collateral note, for, as this court pointed out in the *Gammon* case, if, as between the original parties on the collateral note, the maker is

Barber v. General Automotive Corporation, 240 Ill. App. 85.

liable to pay it, it is wholly immaterial to him whether judgment is had against him in favor of one who has been holding the note as collateral security, or any other lawful holder, as the judgment would be a bar to a second suit. But if such equities do exist, then the collateral note—the indebtedness, to which the collateral attached, having been paid—is subject to them in this case. The only evidence submitted by the defendant in the case at bar was the testimony of Kingsley to the effect that he told Barber that such equities did exist. No evidence was submitted to the effect that they did in fact exist nor what they consisted of, if they did exist. That issue must be determined.

As in the other two cases involved, a motion was made by the plaintiff to strike the reply brief by the defendant, which motion was reserved to the hearing. That motion is now denied. It is true that this consolidated brief raises points for the first time, and, to that extent, the brief violates the rules of this court, but there is other matter contained in the brief, and, furthermore, we are not deciding the case on the points thus sought to be raised, and, therefore, the action taken on this motion is as stated.

For the reasons we have given the judgment of the municipal court is reversed and the cause is remanded to that court for further proceedings not inconsistent with the views expressed in this opinion.

*Judgment reversed and cause remanded.*

TAYLOR and O'CONNOR, JJ., concur.