PAUL J. SCHRANZ, II, *et al.*, Plaintiffs-Appellees, *v.* I. L. GROSSMAN, INC., *et al.*, Defendants-Appellants.

First District (5th Division)    No. 79-359

Opinion filed November 7, 1980.

508

Allen C. Engerman, Barry A. Erlick, and Jerry A. Esrig, all of Solomon, Rosenfeld, Elliott, Stiefel & Engerman, Ltd., of Chicago, for appellants.

Philip M. Bloom and Jeffrey J. Keck, both of Bloom, Denberg & Vanasco, Ltd., of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs brought this action on a promissory note made by defendant I. L. Grossman, Inc. (Grossman), and guaranteed by defendant Evans Mill Supply Co. (Evans), to a third party Pro's, Inc. (Pro's), who later transferred these instruments to the plaintiffs. Following a bench trial, the trial court found plaintiffs to be holders in due course of a security interest in these instruments and awarded plaintiffs a judgment of $49,194.77. Defendants, Grossman and Evans, appeal, and plaintiffs cross-appeal from the trial court's judgment.

As grounds for reversal, defendants maintain that (1) two parties, William C. Nicholus, d/b/a Enterprise Sales Co., and Melvin Bressler were improperly aligned by the trial court as defendants; (2) that Louis Rifkin and Pro's, Inc., were necessary parties to this action and were not joined; (3) that the Evans guaranty was not assignable, and in addition, the assignment of the guaranty in this case materially altered the terms of Evans' obligation as guarantor resulting in a discharge of the guarantor; (4) that the Grossman note was not negotiated to plaintiffs; (5) that plaintiffs were not holders in due course of these instruments, and (6) that the trial court made several erroneous evidentiary rulings during the trial.

Plaintiffs, in their cross-appeal, maintain that they are holders in due course for the full amount of the Grossman note and Evans guaranty. Consequently, plaintiffs seek a remand to the trial court for purposes of receiving a judgment for the full amount of the note and guaranty.

The pertinent facts are as follows:

In December of 1970, William C. Nicholus, d/b/a Enterprise Sales Co., Melvin Bressler and plaintiffs became shareholders of Pro's. One year later, Federal litigation commenced between Pro's and plaintiffs along with Bressler and Nicholus. In settlement of this litigation, the parties entered into an agreement in April 1973 whereby Pro's paid plaintiffs, Bressler and Nicholus, a $15,000 cashier's check and executed a promissory note for $60,000 which was secured by a promissory note of $135,000 made by Grossman and payable to the order of Pro's and a guaranty by Evans of the Grossman note. Both the Grossman note and the Evans guaranty were negotiated by Pro's to plaintiffs, Bressler and

Nicholus. In return for this consideration, plaintiffs, Bressler and Nicholus, executed a release of their claims against Pro's and transferred to Pro's their shares in that corporation. After the note and guaranty were placed into an escrow with Chicago Title and Trust Company, plaintiffs' attorney and agent, Philip Bloom, sent Grossman and Evans notices of negotiation by Pro's of the note and guaranty. The notices also included the name of Louis Rifkin as an endorsee of the note and guaranty. However, neither the note nor the guaranty were actually endorsed to Rifkin.

In January 1974 Grossman refused to make further payment to Pro's on Grossman's note of $135,000 whereupon Pro's terminated its payments to plaintiffs under the $60,000 promissory note. Following Pro's default, Bloom notified the escrowee, Chicago Title and Trust, of Pro's default, and Chicago Title and Trust, consistent with the terms of the escrow agreement, gave Bloom possession of the Grossman note and the Evans guaranty. Plaintiffs subsequently brought the instant action on the note and guaranty.

At this point, a brief procedural history of this action is warranted. On December 6, 1974, nine months after the complaint was filed, plaintiffs moved to join William C. Nicholus, d/b/a Enterprise Sales Co., and Melvin Bressler as plaintiffs. The trial court on February 18, 1975, granted this motion *nunc pro tunc* to December 6, 1974. On February 4, 1975, defendants filed their answer including affirmative defenses to the plaintiffs' complaint. Defendants denied that plaintiffs were holders of these instruments; that plaintiffs gave value for the instruments; and that plaintiffs received the instruments in good faith and without notice of any defenses against the instruments. As affirmative defenses, defendants claimed that Louis Rifkin is a necessary party to the present action; that the Evans guaranty is not assignable; and that the purported assignment of the Evans guaranty materially altered the guarantor's obligation, thereby resulting in a discharge of the guarantor. Finally, defendants assert that the note and guaranty were issued to Pro's as a result of significant misrepresentations which would constitute valid defenses against a mere holder.

Throughout the discovery stage of this litigation, defendants sought repeatedly to obtain the deposition of Bressler and Nicholus. Neither plaintiff responded to the notices of deposition. In March 1978, plaintiffs' attorney moved to re-align Bressler and Nicholus as defendants under section 23 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 23), which motion was denied on March 7, 1978. One week later, defendants moved for sanctions against plaintiffs because of the refusal of Bressler and Nicholus to appear for deposition. After hearing the arguments of both sides, the trial court on March 14, 1978, entered an order realigning

Bressler and Nicholus as defendants, confessing judgments against Bressler and Nicholus, and barring Bressler and Nicholus from providing testimony favorable to the remaining plaintiffs. Thereafter, plaintiffs' counsel, Philip Bloom, moved to withdraw as counsel for Bressler and Nicholus. Bloom informed the court that Bressler had requested Bloom's firm to withdraw as counsel, and that Bressler had assigned all his interest in the Grossman note and the Evans guaranty to the remaining plaintiffs, Schranz, Redhead and Sebrowski. A written assignment by Bressler was attached to the motion. Bloom also represented to the court that he had been unable to contact Nicholus and that he believed Nicholus has either left the jurisdiction permanently, or is dead. The trial court granted the motion to withdraw as counsel for Bressler and Nicholus.

Finally, immediately prior to trial on August 7, 1978, the trial court found as a matter of law that the Evans guaranty was assignable. The trial court also concluded that the terms of the assignment of the Evans guaranty from Pro's to the plaintiffs did not materially alter Evans' obligation as guarantor, and therefore did not discharge Evans' obligation as guarantor of the Grossman note.

■■ The resolution of this case rests in part on several documents which were introduced into evidence at the trial below. We note that it is the burden of the appellant to furnish a record sufficient to establish reversible error. (*Sandberg v. American Machining Co.* (1975), 31 Ill. App. 3d 449, 334 N.E.2d 246.) Where the record is lacking, a reviewing court will indulge every presumption favorable to the judgment or order appealed from. (*Sandberg.*) Here, the appellant has failed to include the agreement embodying the settlement of the Federal litigation between plaintiffs and Pro's and the escrow agreement in the record before this court. Consequently, we will assume that the terms of both the settlement agreement and the escrow agreement support the trial court's ultimate findings in this case.

The first issue we face is defendants' contention that the trial court's order of March 14, 1978, re-aligning Bressler and Nicholus as defendants was improper. This order came as a result of the defendants' motion for sanctions under Supreme Court Rule 219 (Ill. Rev. Stat. 1977, ch. 110A, par. 219). Since Bressler and Nicholus had failed to appear for their depositions, the trial court believed severe sanctions were required. The trial court, however, was concerned by the requirement of section 3—116 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 3—116). Section 3—116 of the Uniform Commercial Code provides in pertinent part:

> "An instrument payable to the order of two or more persons
> * * *

(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them." (Ill. Rev. Stat. 1977, ch. 26, par. 3—116.)

The trial court apparently felt that it could not dismiss these two parties without eliminating the remaining plaintiffs' cause of action by virtue of section 3—116 of the Commercial Code. Consequently, the trial court attempted to sanction Bressler and Nicholus as severely as possible without dismissing them from the suit. This was accomplished by the March 14, 1978, order.

■■ In our view, the purpose of section 3—116 is to protect the interest of all parties entitled to payment under the instrument. (See *Kanelos v. Tzamalis* (1966), 73 Ill. App. 2d 283, 219 N.E.2d 755.) By this rule, an instrument payable to two or more persons, and not in the alternative, could only be enforced jointly by those persons. While the trial court's action in this case of re-aligning these parties was unusual, we believe it in no way violated the purpose of section 3—116 or prejudiced the interests of the defendants.

First, Bressler and Nicholus were joined as plaintiffs to this suit and thus had the opportunity to reap the benefits of enforcing the note and guaranty. They voluntarily chose not to participate in this litigation. Their interest in the note and guaranty was not denied them by a clandestine act of less than all the parties seeking to enforce the instruments, but rather by their own indifference. In fact, Bressler assigned his interest in the instruments to the remaining plaintiffs. The purpose of section 3—116, to protect the interest of all parties, has not been violated.

■■ Second, the trial court's order of March 14, 1978, did not prejudice these defendants. Before reaching defendants' main argument on this point, we must dispose of their contention that the trial court's order confessing judgment against Bressler and Nicholus without notice was improper. Simply stated, defendants lack standing to contest an order which solely affects the interests of other parties. The propriety of this order could only be contested by Bressler or Nicholus. No prejudice or harm resulted to defendants.

Defendants' more significant argument is that the trial court's order barring the testimony of Bressler and Nicholus greatly impaired their ability to show that either the plaintiffs, Bressler, or Nicholus had notice of available defenses against the Grossman note and Evans guaranty. This notice, of course, would defeat plaintiffs' claim to holder in due course status. Our review of the hearings between counsel and the court on March 14, 1978, and on August 7, 1978, reveals that the trial court did not prohibit defendants from obtaining the testimony of Bressler or Nicholus. On both occasions, the trial court stressed that Bressler and Nicholus would only be prevented from providing testimony favorable to the

remaining plaintiffs. Defendants were free to call them on their own behalf, and if necessary, they could be treated as hostile witnesses. (See Ill. Rev. Stat. 1977, ch. 110A, par. 238.) We also note that the record is barren as to what steps defendants took to obtain the testimony of Bressler and Nicholus once they were re-aligned as defendants. Consequently, there remains the possibility that defendants could have obtained the testimony of Bressler and Nicholus had they chosen to do so. In addition, defendants provided no specific factual offer of proof describing the relevant and significant testimony which could be provided by Bressler and Nicholus. General references that Bressler and Nicholus had notice of defenses to the note and guaranty are not sufficient to show prejudice. The trial court's order of March 14, 1978, does not constitute reversible error.

■■ Defendants' second contention on appeal is that Louis Rifkin was a necessary party to this action. In reaching this conclusion, defendants rely on the reference in the notices of negotiation to Rifkin as an endorsee of these instruments; Rifkin's involvement in the Federal litigation between Pro's and plaintiffs; and Rifkin's participation in the settlement agreement between Pro's and plaintiffs. Thus, they reason that Rifkin had an interest in the note which required him to be joined as a plaintiff in this action. (Ill. Rev. Stat. 1977, ch. 26, par. 3—116.) Section 3—116 requires only that an instrument made payable to two or more persons, not in the alternative, must be jointly enforced by all the parties. In this case, the instruments were endorsed to Schranz, Redhead, Sebrowski, Nicholus, d/b/a Enterprise Sales Co., and Bressler. The instruments were not endorsed to Rifkin. Moreover, according to Bloom, the inclusion of Rifkin's name as an endorsee in the notice of negotiation was a clerical mistake. We hold that Louis Rifkin was not a necessary party to this action under section 3—116 (Ill. Rev. Stat. 1977, ch. 26, par. 3—116).

■■ Defendants' third contention is that the Evans guaranty was not assignable. The general rule in Illinois is that guaranties are nonassignable. (*Second National Bank v. Diefendorf* (1878), 90 Ill. 396.) This rule, however, is not applied automatically. Rather, the courts will examine the facts of each case to determine whether the policy underlying the rule is applicable. The rule is a corollary of general contract principles that a party may be held only to the precise obligation which it undertook. (See *Essex International, Inc. v. Clamage* (7th Cir. 1971), 440 F.2d 547.) Thus, the assignment of the guaranty will not discharge the guarantor unless the "essentials of the original contact [of guaranty] have * * * been changed and the performance required of the principal is * * * materially different from that first contemplated." (*Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 301-02, 201 N.E.2d 127, 133.) Defendants here contend that the simple assignment of the guaranty pursuant to a contract between the creditor-guarantee (Pro's) and third

parties (plaintiffs) resulted in a material alteration of the guarantor's (Evans') obligation. We do not agree. As in *Claude Southern Corp.* neither the obligation of the guarantor (Evans) nor the extension of credit by the creditor (Pro's) nor the obligation of the principal (Grossman) was in any way altered by this assignment. Grossman is still obligated to make its payments to Pro's under the $135,000 note; Pro's extension of credit on the Grossman note remains; and only the direction of payment by Evans has been altered, not its obligation to pay. No material alteration of the guarantor's obligation has taken place. Thus, we hold that the simple assignment of the guaranty from Pro's to plaintiffs does not discharge Evans.

Defendants also contend that more than a simple assignment of the guaranty is involved in this case; the notice of negotiation of the Evans guaranty eliminated the option of prepayment and thus materially altered Evans obligation as guarantor. They point out that a material alteration of the guarantor's obligation will result in a discharge of the guarantor. (*Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 201 N.E.2d 127.) In the case at bar, the underlying promissory note between Grossman and Pro's granted Grossman "full right of prepayment without penalty." By this language, Grossman could accelerate the payments and thus complete payment of the note before its maturity. Regardless of whether Grossman chose to exercise its prepayment option, Evans' duty as guarantor remained unaltered. It became liable to Pro's only when Grossman failed to make a timely payment to Pro's. The purported elimination of the acceleration clause by the notice of negotiation did not affect Evans; it remained liable only upon the default of Grossman. Thus, no material alteration of Evans' obligation occurred in this case.

Defendants next maintain that plaintiffs were not holders of a negotiable instrument. More specifically, they claim that the Grossman note was not negotiated to plaintiffs because of a lack of delivery. A holder has possession of an instrument which has been properly negotiated to him. (Ill. Rev. Stat. 1977, ch. 26, par. 1—201(20); Ill. Rev. Stat. 1977, ch. 26, par. 3—302.) Negotiation is defined as:

> "(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery." (Ill. Rev. Stat. 1977, ch. 26, par. 3—302.)

They do not contest that the Grossman note was payable to order (Ill. Rev. Stat. 1977, ch. 26, par. 3—110) and was properly indorsed by Pro's. Thus, the only question is whether the note was delivered to plaintiffs.

On April 13, 1973, after the execution of the settlement agreement between Pro's and plaintiffs, the Grossman note was placed into an escrow account with Chicago Title and Trust. According to Bloom, the escrow agreement dictated that the note and guaranty were to remain in escrow until such time as Pro's defaulted on its note to plaintiffs. Pro's did default on its note to plaintiffs in February 1974. Upon notice of this default, the escrowee, according to its duty under the escrow agreement, delivered the note and guaranty to plaintiffs. We must decide whether delivery, under the Commercial Code, occurred when the note was placed into escrow or at the time it was delivered from escrow to plaintiffs. Establishment of this fact will support the trial court's threshold finding that plaintiffs were holders of a negotiable instrument. Additionally, establishment of the time of delivery is crucial in determining whether plaintiffs received the note without notice of defenses against it.

■■ The Commercial Code defines "delivery" of an instrument as "voluntary transfer of possession." (Ill. Rev. Stat. 1977, ch. 26, par. 1—201(14).) Where the maker of a note has parted with possession and all control over it, there is a valid delivery. (*Burr v. Beckler* (1914), 264 Ill. 230, 106 N.E. 206.) A delivery may be conditional where it takes effect only upon the happening of a future event, provided that the parties agree the instrument would be ineffective until the happening of the future event. (*Investors Commercial Corp. v. Metcalf* (1957), 13 Ill. App. 2d 99, 140 N.E.2d 924.) However, in the present case, Pro's tendered both possession and control over the note when it was placed in escrow. Once placed in escrow, neither Pro's nor plaintiffs could retrieve the note on their own initiative. Rather, both parties could only receive the instrument upon the happening of a certain event, either Pro's default on the $60,000 note or by its payment of the note. This conditional delivery was effective because both parties understood that the instrument could only be enforced by the plaintiffs upon Pro's default on the note. Thus, delivery of the Grossman note occurred when it was placed in escrow with Chicago Title and Trust.

Next, defendants contend that plaintiffs are not holders in due course because they have not tendered value for the instruments. Plaintiffs executed a release of their claims against Pro's in the Federal litigation and transferred their stock to Pro's in return for a $15,000 cashier's check, Pro's promissory note for $60,000 secured by the Grossman note, for $135,000 and the Evans guaranty. The Commercial Code defines "taking for value" as follows:

> "A holder takes the instrument for value:
> > (a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or

(c) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person." (Ill. Rev. Stat. 1977, ch. 26, par. 3—303.)

Plaintiffs maintain that the execution of the release was value as payment of an antecedent claim (Ill. Rev. Stat. 1977, ch. 26, par. 3—303(b); *Jones v. Sheffield* (1970), 122 Ga. App. 574, 178 S.E.2d 299), and also by tendering to Pro's their stock in that corporation. Further, plaintiffs assert that they gave value by accepting the Grossman note and Evans guaranty as security for an antecedent claim, the $60,000 Pro's note. (Ill. Rev. Stat. 1977, ch. 26, par. 3—303(b); *Joseph Mazer Co. v. Blauer-Goldstone Co.* (1930), 259 Ill. App. 305; *Barber v. General Automotive Corp.* (1926), 240 Ill. App. 85.) In response defendants assert that no value was given because neither the release, the stock, the note nor the guaranty were delivered to the respective parties; rather they were placed into an escrow account. Assuming, without deciding, that the Grossman note and Evans guaranty need be delivered to constitute value, we believe value was given here.

■■ A similar argument confronted our supreme court in *Crest Finance Co. v. First State Bank* (1967), 37 Ill. 2d 243, 226 N.E.2d 369. In that case, the seller of stock was to receive a promissory note and the buyer was to assume guaranties made by the seller or discharge the underlying obligations to these guaranties. The stock was placed into an escrow account pending the buyer's action to assume the seller's guaranties or discharge the underlying debts. Our supreme court held that transfer of the stock into escrow was an "irrevocable commitment" under section 3—303(c) of the Commercial Code and thus, value. The court stated that the seller had placed the stock beyond his control which was an irrevocable commitment. To conclude otherwise, said the court, would ignore

"* * * the 'irrevocable commitment' language in section 3—303(c) which, according to comment 6 is new but recognizes an exception to the rule that an executory promise is not value. 'Irrevocable commitment' in section 3—303(c) cannot be read to mean complete performance, otherwise it would be surplusage because the situation would have been covered by section 3—303(a)." (*Crest Finance Co.*, 37 Ill. 2d 243, 250, 226 N.E.2d 369, 373.)

The court stressed that no act remained for the seller to complete delivery, but only the act of the buyer either to assume the guaranties or discharge the underlying obligations. Similarly in the present case, plaintiffs have transferred all control over their release and the stock by placing them in escrow. Only the action of Pro's in either paying its note

or defaulting on it would remove the release and stock from escrow. The opinion in *Crest Finance Co.* remains the law today. Consequently, we conclude that plaintiffs have given value for the Grossman note and Evans guaranty.

Defendants further maintain that plaintiffs are not holders in due course because they took the note with notice that it was overdue and that defenses against it exist. The Grossman note and the Evans guaranty were given to Pro's as consideration for the sale of a division of Pro's entitled Parade Products Division (Parade). As additional consideration to Grossman, Pro's agreed to transfer to Grossman an employment contract between Parade's president, Harold Mize, and Pro's. Defendants contend that plaintiffs took the Grossman note and Evans guaranty with notice that (1) the Grossman note was overdue; (2) Pro's was unable to assign the Mize contract to Grossman which was an essential part of the consideration for the Grossman note; and (3) Pro's fraudulently misrepresented to Grossman the assets of Parade.

■■ According to the Commercial Code, a holder in due course is a holder who takes the instrument for value, in good faith, and without notice that it is overdue, dishonored, or of any defense against or claim to it on the part of any person. (Ill. Rev. Stat. 1977, ch. 26, par. 3—302.) Notice is defined as:

"A person has 'notice' of a fact when
    (a) he has actual knowledge of it; or
    (b) he has received a notice or notification of it; or
    (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.
             * * *"

(Ill. Rev. Stat. 1977, ch. 26, par. 1—201(25).)

The crucial time in determining whether a holder has notice is the time of negotiation of the instrument to the holder. (*McCook County National Bank v. Compton* (8th Cir. 1977), 558 F.2d 871, *cert. denied* (1977), 434 U.S. 905, 54 L. Ed. 2d 191, 98 S. Ct. 302.) If the holder receives notice of a defense or that the instrument is overdue after the instrument has been negotiated, then that notice is ineffective to defeat his status as a holder in due course. We also note that the element of notice in the definition of a holder in due course (Ill. Rev. Stat. 1977, ch. 26, par. 3—302) is a question of fact to be decided by the trier of fact. (*Paine v. Sheridan Trust & Savings Bank* (1930), 342 Ill. 342, 174 N.E. 368; *Oscar Gruss & Son v. First State Bank* (7th Cir. 1978), 582 F.2d 424.) With this background, we now examine separately each of the defendants' arguments on this point.

First, defendants maintain that plaintiffs obtained the Grossman note and Evans guaranty with notice that the note was overdue. The Grossman note and Evans guaranty were placed into an escrow account on April 13,

518

1973, consistent with the terms of the settlement agreement between Pro's and plaintiffs. At this time, the note had been endorsed to plaintiffs. In February 1974, Grossman defaulted on its $135,000 note to Pro's, and in turn, Pro's defaulted on its $60,000 note to plaintiffs. Plaintiffs unquestionably were aware of the Grossman default at that time. On May 17, 1974, plaintiffs received out of escrow the Grossman note and Evans guaranty. From these facts, defendants claim, the delivery of the instruments out of escrow on May 17, 1974, was the negotiation of the note. Consequently, they conclude that plaintiffs had notice the note was overdue three months before the note was negotiated to them.

The fallacy of defendants' argument is their determination of the time of negotiation of the note. Since the Grossman note was order paper, it was negotiated by delivery with all necessary endorsements. (Ill. Rev. Stat. 1977, ch. 26, par. 3—202.) As we have discussed above, delivery of the Grossman note occurred when it was placed into escrow, and not when it was delivered out of escrow. Thus, the note was negotiated to plaintiffs at the time it was placed into escrow, April 13, 1973, and at that time, plaintiffs were without notice that the note was overdue.

Second, defendants contend that plaintiffs had notice that Pro's was unable to assign the employment contract of Harold Mize to Grossman as required by the sale agreement between Grossman and Pro's. This lack of consideration constitutes a defense to the Grossman note. The operative facts which purportedly support defendants' argument center on a shareholders meeting of Pro's. This meeting took place on February 13, 1973, and was attended by plaintiffs, Schranz and Redhead, who were then shareholders and directors of Pro's. According to defendants' version of the testimony, Schranz and Redhead admitted that at the meeting the shareholders discussed the sale of Parade to Grossman; that Harold Mize's employment contract was part of the consideration for that sale; and that Harold Mize declared at the meeting that his contract was unassignable. Our review of the record does not coincide with defendants' version. Paul Redhead testified that he was present at the shareholders meeting in 1973 when the terms of the sale agreement between Pro's and Grossman were discussed. Redhead also stated that he was aware that the assignment of Harold Mize's employment contract was one of the terms to that sale. On cross-examination by defendants' attorney of Redhead the following colloquy took place:

"Q. And do you recall Mr. Mize stating that he did not feel he had an employment agreement with Pro's Inc., do you recall that?
A. I believe the subject came up for discussion.
* * *
Q. Do you recall Mr. Mize stating that as far as he was concerned, he had no employment agreement with Parade Products?

A. He made some references to having no employment agreement."

While this exchange reveals that the assignability of Mize's employment contract was discussed, it fails to reveal what conclusions were reached by the Pro's shareholders. It is entirely possible that this potential problem was resolved during the course of the shareholders meeting. This possibility was encountered in the redirect examination of Redhead:

"Q. Did you have any reason to believe at that time [April 13, 1973] that Mr. Mize would not perform an employment agreement in April of '73 with regard to Grossman?

A. I thought Mr. Mize would continue working there [Parade with its new owner Grossman]. Now, I do not know about the employment agreement."

Redhead's testimony on this point reveals that any problem with regard to Mize was resolved before the negotiation of the note.

Paul Schranz, who was called to testify by defendants under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) was questioned as to the Pro's shareholders meeting.

"Q. I asked you at the meeting did you hear the statement made at that meeting on February 13 that Mr. Mize's employment agreement was to be assigned to I. L. Grossman by Pro's as one of the terms of the purchase?

A. No, I did not.

Q. Did you recall Mr. Mize standing up and making a statement?

A. Yes, I do.

Q. What did Mr. Mize say?

A. Have no idea."

Neither this testimony nor Redhead's testimony establish that plaintiffs had notice on February 13, 1973, that Mize's employment contract would not be assigned to Grossman. Moreover, the redirect examination of Redhead would allow the trial court to infer that any problem, if one existed, with regard to Mize's employment contract was resolved by the time of negotiation of the Grossman note to plaintiffs. We conclude that there was sufficient evidence to support the trial court's finding that plaintiffs had no notice of the defense involving Mr. Mize's employment contract at the time of negotiation of the Grossman note.

Third, defendants maintain in their brief before this court that plaintiffs had notice of their defense that Pro's participated in a fraud in selling Parade to Grossman. Defendants have offered no citation to the record to support this contention, and we have found none. We therefore find no merit to defendants' contention.

Defendants next contend that plaintiffs lacked good faith when the Grossman note was negotiated to them, and thus are not holders in due

course. (Ill. Rev. Stat. 1977, ch. 26, par. 3—302.) Under the heading of good faith, defendants have offered several buttressing arguments. The Commercial Code defines good faith as "honesty in fact in the conduct or transaction concerned." (Ill. Rev. Stat. 1977, ch. 26, par. 1—201(19).) Also, the question of good faith is a question of fact to be left to the trier of fact. *Paine v. Sheridan Trust & Savings Bank* (1930), 342 Ill. 342, 174 N.E. 368; *Oscar Gruss & Son v. First State Bank* (7th Cir. 1978), 582 F.2d 424.

In defendants' initial supporting argument, defendants assert that plaintiffs had notice of defenses against the note and that it was overdue when it was negotiated to them. This argument is easily dismissed, as we have just concluded above that plaintiffs did not have notice that the note was overdue or that there were defenses against it when it was negotiated to them.

As a second buttressing argument, defendants assert that a close relationship exists between plaintiffs and Pro's which casts serious doubt over plaintiffs' good faith. Defendants believe that this relationship makes plaintiffs guilty by association of the alleged fraudulent practices exercised by Pro's in the sale of Parade. As legal support for this theory, defendants rely on the more stringent analysis of the good faith element conducted by courts when examining consumer financing transactions. (See *Unico v. Owen* (1967), 50 N.J. 101, 232 A.2d 405.) Our review of the record does not support defendants' bald conclusion that a close relationship existed between plaintiffs and Pro's. While plaintiffs were temporarily shareholders and directors of Pro's, heated litigation developed between the two groups. In settlement of this litigation, plaintiffs executed a release of their claims against Pro's and returned their shares in Pro's in exchange for a $15,000 casher's check and Pro's $60,000 note secured by the Grossman note and the Evans guaranty. We do not believe that this would be the basis for a close and confidential relationship which would infer knowledge of Pro's fraud to plaintiffs. The trial court's finding of good faith is supported by the record.

In defendants' final argument on this point, they assert that plaintiffs failure to join initially Nicholus, d/b/a Enterprise Sales Co., and Bressler, and to join Louis Rifkin, demonstrates their lack of good faith in this matter. We have previously concluded that Louis Rifkin was not a necessary party to this action, and we note that Nicholus and Bressler were properly joined by plaintiffs. Defendants' remaining arguments on the good faith issue are meritless and do not warrant discussion.

■■ Defendants also raise several evidentiary issues in their appeal. Based on our review of the record, we believe only two of these issues need be discussed here. They initially claim that the trial court's refusal, until the defense began its case, to order plaintiffs to produce a copy of the settlement agreement between plaintiffs and Pro's was error. During the

plaintiffs' case, the trial court allowed plaintiffs' counsel and the witnesses to refer to this document without ordering production of it by plaintiffs. When questioned on this point, the trial court explained that it would not order production of the document until it was convinced of its relevance to this case. While we feel it would have facilitated the trial of this matter to order production of this document at an earlier point, we do not believe the trial court's cautious approach constitutes reversible error. The trial court ordered production of this document at the start of the defendants' case. The document was introduced into evidence and was used by defense counsel in his examination of Bloom and Schranz both of whom testified under the provisions of section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). Thus, any limitation imposed on defense counsel's original cross-examination of the plaintiffs due to the lack of the document was remedied by the subsequent availability of that document. No reversible error was committed on this point.

• 12 Defendants' second point is that the testimony of the plaintiffs was so contradictory and improbable as to prevent the trial court from giving weight to it. In short, defendants are challenging the sufficiency of the evidence presented to support the trial court's findings. We do not agree. The credibility of witnesses and the weight to be given their testimony are decisions for the trial court. (*Pettee v. County of De Kalb* (1978), 60 Ill. App. 3d 304, 376 N.E.2d 720.) A reviewing court must bear in mind that the trial court was in a superior position to determine the credibility and weight of a witness' testimony. (*Godfrey v. Brown* (1967), 81 Ill. App. 2d 453, 225 N.E.2d 98.) Thus, in a trial without a jury, the appellate court will reverse the judgment only where the trial court's findings are palpably contrary to the manifest weight of the evidence. (*Chicago Central C.F.M., Inc. v. Kimmons* (1974), 17 Ill. App. 3d 370, 308 N.E.2d 329.) We have reviewed the record and the arguments made by defendants before the court. In our opinion, plaintiffs established by a preponderance of the evidence that they were holders of a negotiable note negotiated to them for value, in good faith, and without notice that the note was overdue, or that it had been dishonored, or that there was any defense or claim to it.

This brings us to the final issue which was raised by plaintiffs in their cross-appeal from the judgment below. Plaintiffs contend that they were entitled to the full value of the Grossman note, which was $135,000, either as holders in due course or as holders. In plaintiffs' brief and reply brief, the argument sections on this point contain mere conclusions. Plaintiffs have failed to provide reasoning, statutory support, or relevant case law. Their oblique reference to *Crest Finance Co. v. First State Bank* (1967), 37 Ill. 2d 243, 226 N.E.2d 369, adds nothing to their position. Nevertheless, we feel there is merit to plaintiffs' conclusion that as holders they may be entitled to the full value of the Grossman note.

■■ The instant factual situation is expressly covered by the Commercial Code in section 3—302(4), which provides:

> "A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased." (Ill. Rev. Stat. 1977, ch. 26, par. 3—302(4).)

Plaintiffs' execution of the release of their claims against Pro's and tender of their shares was in exchange for $75,000, $15,000 payable by cashier's check and a $60,000 note. The Grossman note and Evans guaranty acted only as security for the $60,000 note. Thus, plaintiffs may only be holders in due course to the extent of their security interest. (See *In re Estate of Feldman* (1944), 387 Ill. 568, 56 N.E.2d 405; *Barber v. General Automotive Corp.* (1926), 240 Ill. App. 85; and *In re United East Coast Corp.* (E.D.N.Y. 1969), 6 U.C.C. Rptr. 449; and *Wood v. Willman* (Wy. 1967), 423 P.2d 82.) Consequently, the trial court properly found plaintiffs to be holders in due course to the extent of their security interest.

As to the remaining balance of the note, we believe plaintiffs are holders. While section 3—302(4) limited plaintiffs' status as holders in due course to the extent of their security interest, it does not eliminate their proven status as holders of the note. The Commercial Code defines the rights of a holder:

> "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3—603 on payment or satisfaction, discharge it or enforce payment in his own name." (Ill. Rev. Stat. 1977, ch. 26, par. 3—301.)

Section 3—603 does not prevent full payment to the plaintiffs as holders in this case. (Ill. Rev. Stat. 1977, ch. 26, par. 3—603.) Consequently, plaintiffs as holders may enforce the note to its full value. It must be remembered, however, that plaintiffs are only holders to the remaining balance, and as such, are subject to defenses against the note which may be raised by defendants. (See *Wood v. Willman* (Wy. 1967), 423 P.2d 82; and *Barber v. General Automotive Corp.* (1926), 240 Ill. App. 85.) Thus, the trial court's rejection of plaintiffs' claim to the full amount of the note was error, and this case must be remanded to the trial court to consider plaintiffs' claim as holders to the remainder of the note. At that time, defendants would be free to raise any defenses which they may have against the note. Of course, our opinion in no way adjudicates the ultimate rights to the proceeds of the note as between Pro's and plaintiffs.

Finally, defendants maintain that Pro's was a necessary party to this action. They reason that since plaintiffs are seeking the full value of the Grossman note and the Evans guaranty, Pro's, who has a legitimate claim at least to the surplus of the note beyond the plaintiffs' security interest, is a necessary party. In our opinion, Pro's interest in the note has not been

infringed upon by this action. Pro's may, in a separate action against plaintiffs, challenge their right both to the amount of the security interest and to the balance of the note. Proceeding in this fashion would also be consistent with the general purpose of article 3 of the Commercial Code to facilitate the free negotiability of commercial paper.

Defendants also believe that the failure to join Pro's may subject them to double liability on the note; the first liability would be paying the judgment to plaintiffs and the second liability would be incurred if Pro's were able to sue defendants on the note. The Commercial Code was cognizant of this possibility and provided against the second liability by section 3—603. Section 3—603 states in pertinent part:

> "The liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties." (Ill. Rev. Stat. 1977, ch. 26, par. 3—603.)

Thus, if defendants were found liable to plaintiffs for the full amount of the note, section 3—603 would prevent a second liability payment on the note to Pro's. We therefore conclude that while Pro's was a party which could be properly joined, it was not a necessary and indispensable party to this action.

Accordingly, the judgment of the circuit court is affirmed in part, reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.