JUSTICE WEBBER
 

 delivered the opinion of the court:
 

 This case concerns the home rule taxing powers of the city of Springfield; specifically, whether the proceeds collected from a tax imposed upon the rental of hotel and motel rooms may be used by the city for general corporate purposes, or whether such proceeds are restricted to the promotion and development of tourism and conventions.
 

 In 1972 the city adopted an ordinance which in substance provided for a tax upon the use and privilege of renting a hotel or motel room. The tax was to be collected from the renter, and after payment of some of the indebtedness of the Springfield Metropolitan Exposition and Auditorium Authority, the balance of the proceeds from the tax was to be paid into a special fund to promote tourism and conventions in the city.
 

 In 1976 the ordinance was amended to remove the requirement that the tax proceeds be used for the development of tourism and instead diverted the tax proceeds into the city’s treasury. Provision was made for payment to the exposition authority and the balance was to be retained until lawfully appropriated and expended by ordinance.
 

 In 1982 the city adopted its annual appropriation ordinance which provided for the anticipated use of $200,000 of hotel-motel tax receipts in order to balance the city’s budget. Within a few days after the adoption of this ordinance, the plaintiffs, a hotel-motel association and certain operators of hostelries in the city, filed the instant suit against the defendants, the city, its mayor, and its commissioners. After some procedural problems which are not pertinent here, the complaint was amended and dismissed by the trial court on motion of the defendants. This appeal followed.
 

 The amended complaint alleges the history of the ordinances as set forth above and sought as relief: (1) a declaratory judgment that the 1976 ordinance violated the provisions of article VII, sections 6(e) and 6(g), (h) and (i) of the Illinois Constitution of 1970, and section 8— 3 — 14 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 8 — 3—14); and (2) a permanent injunction prohibiting the defendants from transferring the hotel-motel tax funds to any fund other than that for the promotion of tourism, conventions and other special events in the city.
 

 It is undisputed that Springfield is a home rule city and thus possesses the power to tax under section 6(a) of article VII of the Illinois Constitution of 1970. Any limitation on that power must be found in section 6(e) which provides:
 

 “A home rule unit shall have only the power that the General Assembly may provide by law *** to license for revenue or impose taxes upon or measured by income or earnings or upon occupations.” Ill. Const. 1970, art. VII, sec. 6(e).
 

 The root question here is whether the Springfield tax is one upon an occupation; if it is not, the city has ample power under section 6(a) to impose the tax without limitation; if it is, then the city must follow the General Assembly guidelines.
 

 Plaintiffs’ principal argument is that the latter alternative is the correct one; that the tax is one upon an occupation, and therefore the city must follow what has been mandated by the General Assembly. This mandate is found, according to plaintiffs, in section 8 — 3—14 of the Illinois Municipal Code, which provides:
 

 “The corporate authorities of any municipality containing at least 25,000 and less than 500,000 inhabitants may impose a tax upon all persons engaged in such municipality in the business of renting, leasing or letting rooms in a hotel, as defined in ‘The Hotel Operators’ Occupation Tax Act,’ at a rate not to exceed 5% of the gross rental receipts from such renting, leasing or letting, excluding, however, from gross rental receipts, the proceeds of such renting, leasing or letting to permanent residents of that hotel, and may provide for the administration and enforcement of the tax, and for the collection thereof from the persons subject to the tax, as the corporate authorities determine to be necessary or practicable for the effective administration of the tax.
 

 Persons subject to any tax imposed pursuant to authority granted by this Section may reimburse themselves for their tax liability for such tax by separately stating such tax as an additional charge, which charge may be stated in combination, in a single amount, with State tax imposed under ‘The Hotel Operators’ Occupation Tax Act.’
 

 Nothing in this Section shall be construed to authorize a municipality to impose a tax upon the privilege of engaging in any business which under the constitution of the United States may not be made the subject of taxation by this State.
 

 The amounts collected by any municipality pursuant to this Section shall be expended by the municipality solely to promote tourism, conventions and other special events within that municipality or otherwise to attract nonresidents to visit the municipality.
 

 No funds received pursuant to this Section shall be used to advertise for or otherwise promote new competition in the hotel business.” Ill. Rev. Stat. 1981, ch. 24, par. 8 — 3—14..
 

 Some brief chronology of history is necessary at this point. In 1967 the General Assembly enacted section 8 — 3—13 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 8 — 3—13), which contains provisions essentially similar to section 8 — 3—14, cited above, except that it was limited to municipalities having a population of more than 500,000 inhabitants. The Illinois Constitution of 1970 came next with its home rule taxing powers. Finally, section 8 — 3—14, cited above, was enacted in 1975 and applied to municipalities having a population of more than 25,000 but less than 500,000 inhabitants. It might also be noted, although not material to the instant case, that section 8 — 3—14 was amended by the General Assembly in 1982 to remove the population limitations but otherwise remained the same. Ill. Rev. Stat., 1982 Supp., ch. 24, par. 8 — 3—14.
 

 This forms the basis for plaintiffs’ argument: prior to the adoption of the Illinois Constitution of 1970 with its home rule powers, all municipalities were subject to the “Dillon rule,” which in essence held that they had only such powers as might be delegated to them by the General Assembly. Section 8 — 3—13, concerning the larger cities, was an example of the Dillon rule. The 1970 Constitution intervened, but the Dillon rule was preserved in article VII, section 6(e). The enactment of section 8 — 3—14 subsequent to the adoption of the 1970 Constitution indicates an intent on the part of the General Assembly that a hotel-motel tax is a tax upon an occupation and hence is regulated by delegated powers.
 

 We do not agree. In our opinion section 8 — 3—14 was enacted to allow non-home-rule units of government, within limitations, to impose hotel-motel taxes under the Dillon rule which still applies to them. Home rule units derive their power from section 6(a) of article VII of the 1970 Constitution, unfettered by the Dillon rule.
 

 The leading case on this subject is the recent supreme court decision of Commercial National Bank v. City of Chicago (1982), 89 Ill. 2d 45, 432 N.E .2d 227. There the court struck down a tax by the city of Chicago on the purchasers of professional and commercial services. The court found that taxes upon these services were of the type that the delegates to the Illinois Constitutional Convention wished to limit by adopting section 6(e) of article VII. The court found that this was an occupation tax despite the fact that the city of Chicago expressly stated that it was a tax on the purchasers of the services. In coming to this conclusion the supreme court discussed the interplay of sections 6(a) and 6(e) in depth.
 

 After reviewing the constitutional provisions and statements of the delegates to the constitutional convention, the court in Commercial National Bank found that sales and excise taxes were clearly within the grant of the power “to tax” conferred upon home rule units by section 6(a) of article VII of the constitution and that section 6(e) of that article did not affect or limit the power of a home rule unit to impose such taxes. However, it was just as clear to the court that a tax on services was an occupation tax limited by section 6(e). As the court noted, the distinction between a sales tax and an occupation tax is not always clear. Both are measured by substantially the same standards and both taxes are generally shifted forward to the consumer, with the business firm serving as a tax-collecting agent. As a result, “[t]he difference between the two taxes is primarily one of legislative intent.” 89 Ill. 2d 45, 66, 432 N.E.2d 227, 237.
 

 As our supreme court noted, it was the clear intent of the constitutional convention delegates that local governments’ power to levy income taxes should be restricted. In order that this restriction should not be easily circumvented, the delegates placed a similar restriction on the use of occupation taxes. The delegates feared that a tax on various occupations would accomplish the same result as an income tax. It is clear that the restriction on occupation taxes would apply to a tax on services. The services of doctors, dentists, lawyers, accountants, stock brokers, and real estate and insurance agents are commonly understood to be included in “service” occupations.
 

 On the other hand, a sales tax is commonly understood to be a tax on the sale of tangible property. Such a tax was not meant to be restricted by section 6(e) of article VII.
 

 A tax on the use of a hotel room appears to fall somewhere in between these clearly defined extremes. The question of whether this tax is an occupation tax or not must then be answered by resorting to the intent of the delegates at the constitutional convention.
 

 In the Commercial National Bank decision, the supreme court quoted the report of the Local Government Committee to the constitutional convention. The report contained examples of taxes that would be permissible under the general powers of a home rule unit. The examples included taxes on gasoline, hotel rooms, liquor, food and drugs. The court noted that these were taxes “which the constitutional convention perceived to be within the power of home rule units to impose, and were considered as not being limited by the restrictions of section 6(e) of article VII.” 89 Ill. 2d 45, 63, 432 N.E.2d 227, 235.
 

 The court also quoted a delegate who stated that either a “ ‘sales or use tax’ ” could be properly imposed by a home rule unit. (Emphasis added.) 89 Ill. 2d 45, 56, 432 N.E.2d 227, 232.
 

 The intent of the delegates seems clear. The use of a hotel room is specifically grouped with a list of tangible goods which the convention viewed as freely taxable under section 6(a) of article VII of the Illinois Constitution. While not as tangible as the other exam-pies, the use of a hotel room involves the use of many tangible objects. The rental of a hotel room can certainly be distinguished from the purchase of a lawyer’s or doctor’s services.
 

 Moreover, a series of supreme court cases have distinguished allowable section 6(a) taxes from the restricted section 6(e) taxes. These cases were concisely reviewed in Commercial National Bank:
 

 “In S. Bloom, Inc. v. Korshak (1972), 52 Ill. 2d 56, a tax imposed upon the sale of cigarettes was upheld against the challenge that it was an occupation tax which could not be levied without a grant of authority from the General Assembly as required by section 6(e) of article YII of the Constitution. In Mulligan v. Dunne (1975), 61 Ill. 2d 544, a tax of a fixed amount per gallon on the retail sale of alcoholic beverages was upheld against the contention that it was an occupation tax. In Town of Cicero v. Fox Valley Trotting Club, Inc. (1976), 65 Ill. 2d 10, an ordinance was upheld which imposed a flat-rate tax of 10 cents for each person witnessing, participating in, or attending a place of entertainment. It was contended that this constituted an occupation tax. In Kerasotes Rialto Theater Corp. v. City of Peoria (1979), 77 Ill. 2d 491, a tax of 2% of the price of admission to amusements was held not to be a tax upon occupations. In Jacobs v. City of Chicago (1973), 53 Ill. 2d 421, a tax was imposed upon the use and privilege of parking a motor vehicle upon or in a parking lot or garage. The tax was challenged as an attempt to license for revenue, which was beyond the taxing authority of home rule units under section 6(e) of article VII, unless authorized by the General Assembly. This court upheld the tax. Here, as in the other cases, the tax was clearly within the scope of the examples set out in the majority committee report. There is no distinction between the tax on a hotel room noted in the examples given and a tax on the use of a parking place for a vehicle.” (Emphasis added.) 89 Ill. 2d 45, 59, 432 N.E.2d 227, 233.
 

 We are thus led to the conclusion that Commercial National Bank controls this decision and that the Springfield tax is a tax upon the use of tangible personal property and not upon an occupation. The city is then free to dispose of the tax proceeds as it sees fit under section 6(a) of article VII; it is not constrained by section 6(e) of article VII.
 

 Our opinion is not altered by the recent case of Waukegan Community Unit School District No. 60 v. City of Waukegan (1983), 95 Ill. 2d 244, 447 N.E.2d 345. In that case the supreme court struck down certain local taxes on utility services and expressly followed Commercial National Bank. We find some language in Waukegan pertinent:
 

 “Undoubtedly the North Shore Gas Company and Commonwealth Edison Company provide the products of gas and electricity to their respective customers. However, those products are provided as a part of a service to the utilities customers. The argument of defendants that Illinois Bell provides the product of ‘message units’ is not persuasive. But assuming that the argument is accepted, the message units are also provided as part of telephone service to consumers. That service includes the maintenance of facilities and equipment that allows the customers to use their telephones and light and heat their homes. The term ‘service,’ in the context of Illinois tax law, has generally been held to include all ‘sales’ transactions other than sales of tangible property. (See, e.g., Illinois Power Co. v. Mahin (1978), 72 Ill. 2d 189.) It is our conclusion today that in accord with the Commercial National Bank holding that article VII, section 6(e), of the 1970 Constitution prohibits all taxes applicable to transactions principally consisting of the sale of ‘services,’ the taxes at issue today are taxes on the sale of services and are therefore prohibited.” 95 Ill. 2d 244, 253-54, 447 N.E.2d 345, 349.
 

 To paraphrase, if a product is only incidental to a service, it is a service tax and subject to the restrictions of section 6(e) of article VII. The corollary is that if the service is only incidental to the product, it is a sales or use tax which may be freely applied under section 6(a) of article VII.
 

 In the case of the rental of a hotel or motel room, it is our opinion that any service, e.g., maid service, television, telephone, et al., is only incidental to the use of the tangible property, i.e., the structure and the appointments and accouterments in the room.
 

 Plaintiffs’ next argument revolves about the concepts of the exercise of powers concurrently or exclusively. These are found in sections 6(g), 6(h), and 6(i) of article VII of the Illinois Constitution of 1970 as follows:
 

 “(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (1) of this section.
 

 (h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power or a power or function specified in subsection (1) of this Section.
 

 (i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State’s exercise to be exclusive.”
 

 A brief examination of section 8 — 3—14 of the Illinois Municipal Code, cited above (Ill. Rev. Stat. 1981, ch. 24, par. 8 — 3—14), in the light of these constitutional provisions is appropriate.
 

 Section 6(h) by its own terms is inapplicable. It provides that the General Assembly may limit a home rule unit in any power or function “other than a taxing power.” It is just such a power which is in question here, and therefore the General Assembly cannot constitutionally claim exclusive exercise.
 

 Section 6(i) deals with concurrent exercise of powers. It is admitted by all parties that the tax under section 8 — 3—14 is an occupation tax. We have already held that the Springfield hotel-motel tax is not. There is no basis for concurrency in such a situation. Furthermore, the State tax on hotels and motels which is found in section 1 et seq. of the Hotel Operators’ Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 481b.31 et seq.) is also clearly an occupation tax. Again, there is no basis for concurrency between two different taxes.
 

 It is also of noteworthiness that section 6(i) requires the General Assembly to limit specifically any concurrent exercise of power and to declare specifically the exercise of its exclusive power. No such limit nor declaration appears in either section 8 — 3—14 of the Illinois Municipal Code or any section of the Hotel Operators’ Occupation Tax Act.
 

 Section 6(g) is of no assistance to the plaintiffs. It requires a three-fifths majority of the members of each house in the General Assembly to deny or limit the taxing power. No contention is made that this requirement was met in the enactment of section 8 — 3—14, and an examination of the journals of both houses leads to the same conclusion. Furthermore, the supreme court has repeatedly held that in order to limit a home rule unit’s powers under section 6(g), the legislature must expressly so state. (Rozner v. Korshak (1973), 55 Ill. 2d 430, 303 N.E.2d 389; Mulligan v. Dunne (1975), 61 Ill. 2d 544, 338 N.E.2d 6; Stryker v. Village of Oak Park (1976), 62 Ill. 2d 523, 343 N.E.2d 919; City of Rockford v. Gill (1979), 75 Ill. 2d 334, 388 N.E.2d 384.) No such expression appears in section 8 — 3—14.
 

 In short, Springfield’s ordinance finds its provenance in section 6(a) of article VII of the Illinois Constitution of 1970 and it is not limited by sections 6(e), 6(g), 6(h) nor 6(i).
 

 Plaintiffs’ final contention is that if this case were remanded for a trial on the merits, they could show that when the 1972 ordinance was enacted, the declared intent of the Springfield council was to promote tourism. Such evidence would be immaterial. Obviously by 1976 the council had changed its mind as it had a right to do under section 6(a) of article VII.
 

 Plaintiffs have also argued that if the hotel-motel ordinance withstands constitutional attack, there will be no end to the proliferation of local taxes. Such a possibility exists without doubt, but its resolution is properly assigned to the political rather than the judicial arena.
 

 The order of the circuit court of Sangamon County dismissing the plaintiffs’ complaint is affirmed.
 

 Affirmed.
 

 MILLS, P.J., and GREEN, J., concur.