KENNETH W. HATTON *et al.*, Plaintiffs-Appellants, v. MONEY LENDERS & ASSOCIATES, LTD., *et al.*, Defendants-Appellees.

First District (4th Division)  No. 83—2373

Opinion filed September 20, 1984.—Rehearing denied October 26, 1984.

Kanter & Mattenson, Ltd., of Chicago (David M. Mattenson and Stuart Gordon, of counsel), for appellants.

Portes, Sharp, Herbst & Kravets, Ltd., of Chicago (David I. Herbst, of counsel), for appellee Associates Finance, Inc.

JUSTICE JIGANTI delivered the opinion of the court:

This action challenges the propriety of an order of summary judgment in which the trial court found that the defendant, Associates Finance, Inc. (Associates), was the holder in due course of a promissory note. The note was initially executed by the plaintiffs, Kenneth and Barbara Hatton, and Money Lenders & Associates, Ltd. (Money

Lenders), on December 24, 1979. The terms of the note provided that the plaintiffs would repay a total of $78,000 in 120 monthly payments of $650 each to Money Lenders. This sum included $30,000 in principal and annual interest in excess of 24%. The note was secured by a trust deed on a rental apartment owned by the plaintiffs. At the time the note was executed, the plaintiffs also completed two affidavits in which they swore under oath that the money would be used solely for business purposes.

Associates purchased the promissory note from Money Lenders on January 12, 1980. After making 14 monthly payments to Associates, the plaintiffs filed suit against both Money Lenders and Associates, alleging that the note was usurious and that it had been procured by misrepresentation and fraud. A default judgment was entered against Money Lenders. Money Lenders is not a party to this appeal. The trial court granted Associates' motion for summary judgment, finding that Associates was a holder in due course and took the note free from all of the claims and defenses of the plaintiffs. The plaintiffs now appeal from this order of summary judgment.

The plaintiffs maintain on appeal that there were sufficient facts of record to indicate that Associates had notice of the plaintiffs' alleged defense of usury at the time Associates purchased the note from Money Lenders. Consequently, the plaintiffs argue that a genuine issue of material fact was before the trial court and that the court therefore improperly entered summary judgment in favor of Associates. The plaintiffs further contend that holder-in-due-course status is a question of fact which in any event would foreclose the trial court from entering an order of summary judgment on that issue.

Before reaching the merits of the parties' legal arguments, we believe a more detailed recitation of the facts of the case is in order. When Associates purchased the note from Money Lenders, it received copies of the plaintiffs' 1977 and 1978 tax returns and the two affidavits which had been completed by the plaintiffs. The tax returns disclosed that the plaintiffs were engaged in both a snow removal business and a security alarm partnership at certain times over the course of the two years in question. The plaintiff Kenneth Hatton was also employed full-time as a movie projectionist, an occupation which provided approximately 95% of the plaintiffs' income in 1977 and 1978. In the first of the two affidavits sworn to by the plaintiffs, there is a provision that the loan would be used for the "snow removal" business and "that the purpose of the loan applied for by me is solely for the purposes of carrying on such business and proceeds will be used for such purpose and for no other." The second affidavit states that

the loan would be used for the "security business" and also contains the above-quoted language.

The plaintiffs and Associates discussed the loan in the course of eight different telephone conversations between January 21, 1980, when Associates verified the loan balance with the plaintiffs following Associates' purchase of the note, and January 9, 1981. At no time during these telephone conversations did the plaintiffs ever inform Associates of any purported claim or defense in connection with the loan. Associates first learned of the plaintiffs' alleged defense when it was served with the plaintiffs' complaint in this action.

In the trial court, the plaintiffs argued that they had borrowed the money to invest in the commodities market and that they had advised Money Lenders that the money would be used for that purpose. At their depositions, the plaintiffs stated that they knew the affidavits were false when they signed them but that they were told by Money Lenders that the signing of the affidavits was a "mere formality." The plaintiffs thus contended that the note was usurious because it was intended for personal rather than business purposes and consequently did not fall under the business loan exception to the Illinois usury statute. See Ill. Rev. Stat. 1979, ch. 74, par. 4(1)(c).

Both at trial and now on appeal, the plaintiffs have maintained that Associates had notice of the plaintiffs' alleged usury defense and therefore could not obtain the status of a holder in due course. In support of this contention, the plaintiffs argue that there was no stated interest rate on the note; that there is a discrepancy on the face of the note as to the dollar amount due from the plaintiffs; that the affidavits contradict each other on their face; that the plaintiffs' tax returns indicate that only 5% of their income was received from the snow removal and security businesses; that the note was secured by real estate owned by the plaintiffs; and that the note was purportedly purchased from Money Lenders by Associates at a large discount. Because of these alleged discrepancies, the plaintiffs now maintain that Associates had notice that the loan would be used for nonbusiness purposes and that therefore, Associates had notice that the plaintiffs possessed a defense to the note under the usury statute. The plaintiffs do not maintain that Associates had actual notice of this alleged defense but that, rather, the note and other documents received by Associates from Money Lenders were irregular on their face, thus providing Associates with constructive notice of the alleged defense.

The Uniform Commercial Code requires that in order for one to be a holder in due course, he must take the instrument for value, in good faith, and without notice that it is overdue, or has been dishon-

ored, or of any defense against or claimed to it on the part of any person. (Ill. Rev. Stat. 1983, ch. 26, par. 3—302.) Section 1—201 (25) of the Code defines "notice" and provides:

"(25) A person has 'notice' of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." (Ill. Rev. Stat. 1983, ch. 26, par. 1—201(25).)

A purchaser of a negotiable instrument has notice of a claim or defense if:

"(a) The instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; or

(b) the purchaser has notice that the obligation of any party is voidable in whole or in part, or that all parties have been discharged." (Ill. Rev. Stat. 1983, ch. 26, par. 3—304.)

The crucial time in determining whether a holder has notice of a claim or defense is the time of negotiation of the instrument. (*Schranz v. I. L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 412 N.E.2d 1378.) Notice received subsequent to the purchase of a loan does not operate to impair holder-in-due-course status. *Crest Finance Co. v. First State Bank* (1967), 37 Ill. 2d 243, 226 N.E.2d 369.

■ In the case at bar, we do not believe that there were any facts of record which demonstrate that Associates had notice of the plaintiffs' alleged defense. First of all, there is no legal requirement that a negotiable instrument include a stated rate of interest. The fact that the note at issue here did not include such a term was therefore insufficient to put Associates on notice. Second, the record discloses that the plaintiffs' assertion that the note is mathematically incorrect is totally without merit. The note provides that 120 monthly installments of $650 must be paid by the plaintiffs, for a total repayment of $78,000. In fact, the plaintiffs stated during oral arguments that this second contention was erroneous.

The plaintiffs further maintain that because the businesses referred to in their affidavits comprised only a small part of their total income, Associates should have been wary that the loan might be used for nonbusiness purposes. We think, however, Associates correctly points out that there is no requirement that a business enterprise must be of a certain size or produce a certain profit before a business loan can be made to it. Fourth, the plaintiffs also argue that the fact

that the note was secured by real estate should have put Associates on notice because, "Any individual who owns a piece of real estate can secure a loan at two or three points over the prime rate from most banks." However, there is absolutely no evidence in the record concerning prevailing interest rates, the credit-worthiness of the plaintiffs, or typical business practices in regard to such loans. This court cannot make the unsupported assumptions urged by the plaintiffs absent any support in the record.

We also find no merit in the plaintiffs' allegation that Associates should have been put on notice because the two affidavits that were executed by the plaintiffs referred to two separate businesses. The two affidavits were executed at the same time and specifically referred to the businesses that the plaintiffs had listed in their Federal income tax returns. The fact that a preprinted portion of the affidavits stated that the loans "will be used for such purpose and for no other," we believe, was utterly insufficient to put Associates on notice that the loan would be used for other than business purposes.

Finally, the plaintiffs maintain that Associates should have been put on notice because the note was sold by Money Lenders to Associates at a large discount. In support of this proposition, the plaintiffs cite *Winter & Hirsch, Inc. v. Passarelli* (1970), 122 Ill. App. 2d 372, 259 N.E.2d 312, wherein the court stated in *dicta* that a party purchasing negotiable paper at a great discount has a duty to inquire further into the initial transaction to determine if the borrower has a defense to the note. However, in *Passarelli*, the court found that the holder of the note had intentionally kept itself in ignorance of certain facts which, if known, would have destroyed its holder-in-due-course status. In the case at bar, Associates examined the plaintiffs' income tax returns and their affidavits of business purpose. As we have stated, nothing in those documents would have put Associates on notice regarding the plaintiffs' alleged defense. Furthermore, Associates talked with the plaintiffs on the telephone on eight occasions to verify and discuss the loan. The plaintiffs never mentioned their purported defense. Therefore, even if we accept the language in *Passarelli* as persuasive support for imposing upon Associates a greater duty of inquiry, we think that Associates in the case at bar satisfied such a duty by going beyond the requirements of the Code to pursue a more comprehensive inquiry than that legally required. Accordingly, we do not believe that any of the alleged "irregularities" cited by the plaintiffs were sufficient to put Associates on notice that the loan would be used for other than business purposes.

While the plaintiffs agree that there is little or no legal support

for each of their above contentions, they nonetheless argue that all of their alleged "irregularities" taken together were sufficient to put Associates on notice concerning their purported defense. We disagree. That negotiable paper is freely transferable in the business community is perhaps its greatest attribute. To require a party who wishes to purchase negotiable paper to pursue a lengthy inquiry not required by the Commercial Code would unduly burden such transactions and impede the free exchange of negotiable paper. In the case at bar, Associates even went so far as to talk on the telephone with the plaintiffs on at least eight occasions concerning their loan. The plaintiffs never once mentioned their purported defense. Taken as a whole, we cannot find that Associates possessed any information sufficient to put it on notice of the plaintiffs' alleged defense. Accordingly, we believe the trial court properly found that Associates was a holder in due course and granted summary judgment in favor of Associates.

■ The plaintiffs next argue on appeal that it was improper for the trial court to grant summary judgment in favor of Associates because holder-in-due-course status is a question of fact to be decided at trial. In support of this contention, the plaintiffs cite *Zemel v. Chateau Royale Corp.* (1962), 35 Ill. App. 2d 313, 182 N.E.2d 383, and *Schranz v. I. L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 412 N.E.2d 1378, wherein the respective courts noted that whether one is a holder in due course is a question of fact. In both of those cases, there were disputed factual matters which would preclude entry of summary judgment. Section 2—1005 of the Illinois Code of Civil Procedure provides that summary judgment should not be entered unless "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) As we have already found, there was no genuine issue as to any material fact in the case at bar. Therefore, the trial court acted properly when it granted summary judgment in favor of Associates.

■ As a final matter on this issue, the plaintiffs cite certain statements made by the trial judge which they contend indicate that the judge was resolving disputed facts rather than ascertaining whether a material fact existed. However, the decision whether summary judgment is appropriate is a question of law. The appellate court need not defer to the trial court's reasoning on a finding of law but may rather make an independent determination on such a question. (See *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525; *Rymer v. Kendall College*

(1978), 64 Ill. App. 3d 355, 380 N.E.2d 1089.) We have found that no genuine issue of material fact was present in this case, and we therefore have found as a matter of law that summary judgment was proper. Consequently, we find no merit in the plaintiffs'. contention.

For the foregoing reasons, the order of summary judgment entered in favor of Associates is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.