RICHARD S. KRILICH *et al.*, Plaintiffs-Appellants, v. MILLIKIN MORT-GAGE COMPANY, Defendant-Appellee (The Mortgage Factory, Inc., Defendant).

First District (5th Division)   No. 1—88—0985

Opinion filed March 30, 1990.

Allen Weissman, of Chicago, for appellants.

Propp & Schultz, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs, Richard S. Krilich and Sandra Krilich, appeal from the entry of summary judgment under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) in favor of

defendant, Millikin Mortgage Company (Millikin Mortgage). We address the following two issues: whether the trial court properly struck plaintiffs' affidavits filed in opposition to the motion for summary judgment and whether there was a genuine issue of material fact that Millikin Mortgage was a holder in due course. We reverse and remand. The following facts are relevant to our decision.

On June 28, 1985, plaintiffs filed a one-count complaint alleging that they entered into an adjustable rate mortgage with the Mortgage Factory, Inc. (Mortgage Factory), on March 22, 1984. The mortgage amount was $75,000 and the interest for the first year was 9.75%. Interest for each subsequent year was adjusted by adding a 1.0% margin to a current index figure which was based on United States Treasury securities. The adjustable rate note was attached to the complaint and reflected that the initial interest rate was 9.75% and the margin was 1.0%. Plaintiffs alleged that in March 1985, when the interest rate was scheduled to change, they received a notice from Millikin Mortgage that their monthly mortgage payment had increased. The notice which was attached to plaintiffs' complaint reflected that the initial interest rate was 9.75% and the margin was 1.5% rather than 1.0%.

Plaintiffs alleged that after they executed the note and mortgage, the note was altered, without their consent or knowledge, to reflect a margin of 1.5%. They alleged that either the Mortgage Factory or Millikin Mortgage altered the note or that Millikin Mortgage had notice that the note was altered. As a remedy, plaintiffs sought to be completely discharged from their obligations under the note.

Millikin Mortgage answered the complaint denying that the terms of the adjustable rate note were as alleged in plaintiffs' complaint and denying that it had knowledge or notice of an alteration of the note. As an affirmative defense, Millikin Mortgage asserted that it was a holder in due course because it paid value for the note, in good faith, and without notice of any defenses against the note. It also alleged that it did not alter the note. Attached to its answer was a copy of the adjustable rate note, which was also attached as an exhibit to plaintiffs' complaint. However, Millikin Mortgage's copy of the adjustable rate note reflected an interest rate of 9.75% and a margin of "1.000" with a line drawn through it and above it was "1.50" with the initials "RSK" and "SK" next to it.

No appearance or answer was filed on behalf of the Mortgage Factory. There was an indication in the record that Mortgage Factory had filed for bankruptcy.

On October 23, 1987, Millikin Mortgage moved for summary judgment on the basis that it was a holder in due course. Attached to its

motion was the affidavit of Eugene Pankner, who was the vice-president of Magna Mortgage, formerly known as Millikin Mortgage. On plaintiffs' motion, the affidavit was stricken because Pankner was not employed by Millikin Mortgage at the time the note was purchased and did not have personal knowledge of the facts stated within that affidavit. Millikin Mortgage filed Pankner's modified affidavit, which stated that in 1984, Millikin Mortgage was in the business of originating residential mortgages and purchasing mortgages from other lending institutions in the secondary market. In his capacity as vice-president, Pankner was the custodian of the files and records of mortgages originated or purchased by Millikin Mortgage. He reviewed the file concerning plaintiffs' mortgage and found Millikin Mortgage purchased the note and mortgage on March 28, 1984. He then stated:

> "I certify that at the time [plaintiffs'] note and mortgage were negotiated to Millikin Mortgage Co., Millikin Mortgage Co. had received no notice of any irregularity relating to the genuineness of any signatures or initials appearing thereon; if Millikin Mortgage Co. had received any such notice, the notice itself or an entry reflecting same would routinely have been found in the subject file."

Attached to Millikin Mortgage's motion for summary judgment were the altered adjustable rate note, which was also attached to its answer, reflecting an initial interest rate of 9.75% and a change in the margin from 1.0% to 1.5%, the mortgage agreement, the assignment agreement between Millikin Mortgage and the Mortgage Factory dated March 22, 1984, and a copy of a check from Millikin Mortgage to the Mortgage Factory for $76,218.75, dated March 28, 1984.

Also on October 23, 1987, plaintiffs moved for summary judgment on the basis that there was no question of fact that the document was fraudulently and materially altered, which served to discharge plaintiffs from the obligations of the note. Plaintiffs apparently abandoned their allegation that Millikin Mortgage altered the note and, rather, argued that Millikin Mortgage purchased the note with notice of a fraudulent and material alteration.

Plaintiffs relied on certain documents which were attached to a memorandum in support of their motion for summary judgment. The first two of these documents were the mortgage agreement and the adjustable rate rider which were recorded with the Cook County recorder of deeds on March 30, 1984. The recorded adjustable rate rider reflected an initial interest rate of 11.75% and a margin of 1.0%. A third document was the altered adjustable rate note, which showed an initial interest rate of 9.75% and a change in the margin from 1.0% to

1.5%. The fourth document attached to plaintiffs' motion was an adjustable rate rider which showed an initial interest rate of 9.75% and a margin of 1.5%. Also attached were plaintiffs' affidavits which stated that on March 22, 1984, they executed an adjustable rate note, a mortgage agreement, and an adjustable rate rider with the Mortgage Factory. Plaintiffs did not attach copies of these documents to their affidavits. Plaintiffs stated that after the closing date they did not sign or initial any changes in the note and did not authorize anyone to sign or initial changes in the documents.

Plaintiffs also filed Pankner's deposition for consideration but did not direct the court's attention to any specific testimony. From our review of the deposition, Pankner testified that he began working for Magna Mortgage in February of 1986. Certain exhibits were identified and marked, and Pankner testified, without objection from Millikin Mortgage, that the following documents, exhibits F, G, and H, were transferred under the assignment agreement between Mortgage Factory and Millikin Mortgage: the adjustable rate note with an initial interest rate of 9.75% and a margin of 1.0% which was changed to 1.5%, the adjustable rate rider with an initial interest rate of 11.75% and a margin of 1.0%, and the mortgage agreement. Pankner also testified:

"Q. You really don't have any personal knowledge pertaining to the purchase of this note and mortgage do you?

A. No.

Q. All you know is what you saw from this file?

A. That's right.

Q. After you came to work for Magna?

A. Yes ***. I haven't even really looked at the file."

Pankner neither signed the deposition nor waived his right to sign it. Millikin Mortgage did not object to the filing of the deposition in consideration for the motion for summary judgment.

On February 5, 1988, the trial judge granted plaintiffs seven days to file an amended brief in support of their motion for summary judgment, and the hearing was scheduled for February 26, 1988. Plaintiffs did not file the amended brief until February 18, 1988, and attached, among other exhibits, the supplemental affidavits of plaintiffs and the affidavit of Janice Buerkett, a former employee of Millikin Mortgage.

Plaintiffs in their supplemental affidavits stated they did not initial the change on the altered adjustable rate note and the adjustable rate rider and they did not authorize anyone to initial the documents for them.

In Buerkett's affidavit she stated she worked for Millikin Mortgage from 1982 until 1987. She was a servicing manager at the time

Millikin Mortgage purchased plaintiffs' note and mortgage in March 1984. She stated that "[w]hile [she] was employed by [Millikin Mortgage, plaintiffs' mortgage] came to [her] attention." She stated the "original" adjustable rate rider had an interest rate of 11.75% and a margin of 1.0%. Millikin Mortgage then returned the "original documents" to the Mortgage Factory "[b]ecause [the Federal National Mortgage Association] requires a [sic] 1.5000 percentage points. Millikin Mortgage then received the changed documents with a 9.75% yearly interest rate and a 1.5000 percentage points rate calculation. The changes were initialed." Then she stated, "[t]he most significant problem was that the recorded adjustable rate rider did not match the rate on the note."

On February 25, 1988, plaintiffs moved for leave to file the amended brief. Millikin Mortgage moved to strike it and the attached affidavits of plaintiffs and Buerkett because they were filed late. The motion was granted, and the order stated, "[i]t is hereby ordered that all pleadings filed by Plaintiffs on February 18, 1988, shall not be considered by this court in hearing the pending motions for summary judgment." In arguing the motions for summary judgment, plaintiffs relied on their original and supplemental affidavits and Buerkett's affidavit. Millikin Mortgage stated that the only proper evidentiary materials were plaintiffs' original and supplemental affidavits and Pankner's affidavit and deposition. In ruling on the motions for summary judgment, the trial judge did not state on the record what evidentiary materials he considered.

The judge denied plaintiffs' motion for summary judgment and granted Millikin Mortgage's motion, finding it was a holder in due course. The trial judge also stated that it would grant plaintiffs leave to amend their complaint to allege a cause of action for reformation of the contract, if plaintiffs chose to do so. Plaintiffs apparently declined as the order was entered without such leave granted. Plaintiffs filed a timely notice of appeal.

OPINION

Plaintiffs' first argument on appeal is that the trial judge improperly struck their amended motion for summary judgment, their supplemental affidavits, and Buerkett's affidavit, which were filed on February 18, 1988. By court order, however, the amended motion was due on February 16. On Millikin Mortgage's motion, the judge struck all pleadings filed on February 18, apparently also striking the affidavits.

■■ Under Supreme Court Rule 183 (107 Ill. 2d R. 183), the trial court may extend the time to file any pleading on a showing of good

cause. The trial judge, however, denied plaintiffs' motion to extend the time for filing their amended motion for summary judgment. Striking the brief because it was filed late was a discretionary matter, and from our review of the record, the trial judge did not abuse his discretion. However, the trial judge also struck from consideration the affidavits which were attached to plaintiffs' motion for summary judgment. Section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c)) allows the party opposing the motion for summary judgment to file counteraffidavits prior to or at the time of the hearing. Although the affidavits appear to have been filed in support of plaintiffs' motion for summary judgment, they can be construed as counteraffidavits because their substance also attacks the basis of Millikin Mortgage's motion for summary judgment. Under the rule, plaintiffs' filing of the affidavits several days prior to the hearing was proper. Therefore, plaintiffs' supplemental affidavits and Buerkett's affidavit should have been considered in ruling on Millikin Mortgage's motion for summary judgment.

■ On appeal Millikin Mortgage argues Buerkett's affidavit does not meet the requirements of Supreme Court Rule 191(a) (107 Ill. 2d R. 191(a)); however, in the trial court, Millikin Mortgage only attacked the affidavit on the basis that it was not timely filed. Millikin Mortgage has, therefore, waived this argument on appeal. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.

The second issue plaintiffs raise on appeal is whether the trial judge properly entered summary judgment in Millikin Mortgage's favor based on his finding that it was a holder in due course.

■ Summary judgment should be granted if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In ruling on a motion for summary judgment, the court must construe pleadings, depositions, and affidavits strictly against the movant and liberally in favor of the opponent. (*Kolakowski*, 83 Ill. 2d 388, 415 N.E.2d 397.) Summary judgment "is a drastic means of disposing of litigation" and should only be granted when the movant's right to summary judgment is "clear and free from doubt." *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.

■ In seeking discharge from their obligation under the altered adjustable rate note, plaintiffs rely on section 3—407 of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 3—407), which states in relevant part:

"§3—407. Alteration.

\* \* \*

(2) As against any person *other than a subsequent holder in due course*

(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

(3) *A subsequent holder in due course may in all cases enforce the instrument according to its original tenor,* and when an incomplete instrument has been completed, he may enforce it as completed.'' (Emphasis added.)

Under section 3—407(2)(a), if the alteration by the holder was fraudulent and material, plaintiffs could only obtain a discharge from the note against Millikin Mortgage if it was not a holder in due course. Ill. Rev. Stat. 1987, ch. 26, par. 3—407(2)(a).

■■ A holder in due course takes an instrument for value, in good faith, and without notice that it is overdue, has been dishonored, or of any defense against or claim to it on the part of any person. (Ill. Rev. Stat. 1987, ch. 26, par. 3—302.) Although the question of whether one is a holder in due course is one of fact (*Atlanta National Bank v. Johnson Tractor Sales* (1971), 130 Ill. App. 2d 793, 267 N.E.2d 358), it can be decided on summary judgment if the evidence presented does not reveal a genuine issue of material fact (*Hatton v. Money Lenders & Associates, Ltd.* (1984), 127 Ill. App. 3d 577, 469 N.E.2d 360).

The only disputed issue between the parties is whether Millikin Mortgage was a holder in due course. Plaintiffs argue that Millikin Mortgage had notice of the fraudulent and material alteration of the note and, therefore, it cannot be a holder in due course. Millikin Mortgage argues that plaintiffs did not present any facts to support their claim that it had notice.

■■ ■ According to the Uniform Commercial Code, a person has notice when he has actual knowledge, he has received notice, or he has reason to know from all the facts and circumstances known to him at the time. (Ill. Rev. Stat. 1987, ch. 26, par. 1—201(25).) A purchaser of a note has notice of a claim or defense if

"the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular *as to call into question its validity, terms or ownership* or to create an ambiguity as to the party to pay[.]'' (Emphasis added.) (Ill. Rev.

Stat. 1987, ch. 26, par. 3—304(1)(a).)

When a negotiable instrument is executed at the same time as another writing, they must be read together as a single agreement. (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 427 N.E.2d 94; Ill. Ann. Stat., ch. 26, par. 3—119, Uniform Commercial Code Comment 3, at 85 (Smith-Hurd 1963).) The holder of a note must have had notice of a claim or defense at the time the note was negotiated. (*Hatton*, 127 Ill. App. 3d 577, 469 N.E.2d 360.) We must therefore focus on the circumstances at the time Millikin Mortgage purchased the note based on the evidence presented in support of and in opposition to the motion for summary judgment.

Pankner stated in his affidavit that he reviewed Millikin Mortgage's file and found it purchased the adjustable rate note on March 28, 1984. Millikin Mortgage's copy of the note it purchased, which was attached to its answer, showed an initial interest rate of 9.75% with a margin of "1.000" with a line drawn through it and above it was "1.50" with initials next to it. Also, Pankner stated that from his review of the file Millikin Mortgage did not receive actual notice of any irregularity of the note.

In his deposition, Pankner testified that the documents which were the subject of the assignment agreement, dated March 22, 1984, were the adjustable rate note which had an initial interest rate of 9.75% and a change in the margin from 1.0% to 1.5%, the adjustable rate rider which had an initial interest rate of 11.75% and a margin of 1.0%, and the mortgage agreement. Pankner testified that he was not employed by Millikin Mortgage at the time the note was purchased. He testified his information came from the company's file and that he had not "even really looked at the file." Millikin Mortgage did not object to this testimony or move to strike the deposition. Also, Pankner did not sign and did not waive his right to sign the deposition, but Millikin Mortgage did not raise an objection. Any objection to Pankner's competency to testify or to any irregularity of the deposition is waived. 107 Ill. 2d Rules 211(c)(1), (d); *Urban v. Village of Inverness* (1988), 176 Ill. App. 3d 1, 530 N.E.2d 976.

Buerkett stated in her affidavit that prior to the purchase, Millikin Mortgage rejected certain "original" documents because the margin was not 1.5%. Subsequently, Millikin Mortgage received "changed" documents which had an interest rate of 9.75% and a margin of 1.5%. The documents, whether original or changed, were not attached to the affidavit and were not specifically identified in the affidavit. Plaintiffs relied on Buerkett's affidavit as raising a question of fact as to whether Millikin Mortgage had notice. However, Buerkett did not

specify which documents were involved. Further, under the facts of this case, the fact that Millikin Mortgage may have seen the documents in their original form does not raise a question of fact that it had notice. It was apparent from the face of the note that it was altered.

■■ A purchaser of a note has notice of a fraudulent and material alteration when the note has such visible evidence of alteration "as to call into question its validity, terms or ownership." (Ill. Rev. Stat. 1987, ch. 26, par. 3—304(1)(a).) Millikin Mortgage purchased the adjustable rate note with knowledge that it was visibly altered. However, in this case the mere fact that the note was altered did not call into question its validity, terms, or ownership. Nevertheless, the adjustable rate note stated that it was subject to a mortgage agreement and an adjustable rate rider. The terms of the adjustable rate note and the adjustable rate rider were different. The note stated that the interest rate was 9.75% and the margin was 1.0%, and the rider stated that the interest rate was 11.75% and the margin was 1.5%. The note was the negotiable instrument, and its terms would control the agreement of the parties despite the conflict. (5 R. Anderson, *Uniform Commercial Code* §3—119:3, at 367, §3—119:6, at 369 (3d ed. 1984).) However, the note and rider, because they were executed at the same time, must be read as a single agreement. (*Main Bank*, 86 Ill. 2d 188, 427 N.E.2d 94.) Further, Pankner testified at his deposition that the note, the adjustable rate rider, and the mortgage agreement were subject to the assignment agreement. At the time Millikin Mortgage purchased the note, it was visibly altered and the rider contained different terms than the note. The discrepancy called into question the validity and the terms of the note. Therefore, a question of fact existed as to whether Millikin Mortgage had notice of a claim or defense to the note under section 3—304. For this reason, the entry of summary judgment in Millikin Mortgage's favor on the basis that it was a holder in -due course was improper.

Reversed and remanded.

COCCIA, P.J., and GORDON, J.,* concur.

---

*Justice R. Eugene Pincham participated in this case prior to his resignation. Since that time, Justice Joseph Gordon was designated the third member of the panel and has read the record and briefs and has listened to the oral argument tape.