TRAVELERS INSURANCE COMPANY, Plaintiff-Appellee, v. FIRST NATIONAL BANK OF BLUE ISLAND, Defendant-Appellant.

First District (5th Division)   No. 1—91—3491

Opinion filed August 6, 1993.

Jenner & Block, of Chicago (Larry M. Wolfson, C. David Watson, and Daniel S. Goldman, of counsel), for appellant.

Coffield, Ungaretti & Harris, of Chicago (Kevin M. Flynn and Barbara J. Anderson, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

In this case of first impression, Travelers Insurance Company (Travelers), the appellee, filed a mortgage foreclosure action in March 1989 on property commonly known as the Holiday Plaza Complex in Matteson, Illinois. In a first mortgage, security agreement and collateral assignment of rents dated in November 1985, debtors granted and assigned to Travelers a security interest in all "rents, issues, proceeds and profits *** from mortgaged premises." Travelers recorded these documents and a UCC-2 financing statement with the recorder of deeds of Cook County in December 1985 and filed a UCC-1 financing statement in the office of Secretary of State of Illinois in February 1986. First National Bank of Blue Island (FNBBI), the appellant, intervened and, in 1991, filed a motion for summary judgment alleging that Travelers failed to properly create and perfect a security interest in the hotel receipts and also allowed the financing statement it did file to lapse. FNBBI claimed a priority interest in the hotel receipts because, in 1986, as security for a loan from FNBBI to debtors, FNBBI was granted a security interest in "all accounts receivable."

FNBBI claims that its security interest was perfected by the filing with the Illinois Secretary of State in September 1986 of a UCC-1 financing statement and that hotel revenues are personal property in which a security interest can only be perfected by the filing of a UCC-1 financing statement.

Travelers filed a cross-motion for summary judgment claiming a prior security interest. Travelers also claims *inter alia* that hotel receipts are "rents," that rents are real property, and that its loan documents were properly recorded and filed. Travelers further claims that the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1989, ch. 26, par. 1—101 *et seq.*) does not apply to "an interest in or lien on real estate." The circuit court judge found *inter alia* that all of the hotel receipts are "rents" or an interest in real property and not accounts receivable; that Travelers has a properly perfected, first priority security interest in the hotel receipts rather than an interest in personal property by virtue of the recorded documents; that Travelers also has a properly perfected, first priority security agreement in all of the remaining property located in or on the property, including but not limited to personal property, by virtue of the recording [*sic*] of its UCC-1 financing statement on February 26, 1986, and the recording of its UCC-2 financing statement with the recorder of deeds on December 2, 1985. Accordingly, the circuit court denied the motion of FNBBI, granted Travelers' cross-motion for summary judgment and entered foreclosure.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1985, Travelers lent $23 million to Mid-Continent Builders, Inc., Matteson Hotel Corporation, MCBI Development Co., and MCBI Hospitality Corporation (collectively debtors). The debtors operated a Holiday Inn hotel complex in Matteson, Illinois.

As security for the debt, Travelers received, *inter alia*, a first mortgage and security agreement; an assignment of leases and rents; a collateral assignment of rents; a UCC-1 financing statement according to provisions of Uniform Commercial Code section 9—401 (Ill. Rev. Stat. 1989, ch. 26, par. 9—401) and a UCC-2 financing statement according to provisions of Uniform Commercial Code section 9—402 (Ill. Rev. Stat. 1989, ch. 26, par. 9—402). All of the documents were dated as of November 25, 1985.

In the first mortgage and security agreement, debtors granted Travelers a security interest in the debtors' hotel, and in

"all rents, issues, proceeds and profits accruing and to accrue from Mortgaged Premises, and all right, title and interest of Mortgagor in and to any and all leases approved by Mortgagee."

The document also provided:

"Mortgagor hereby sells, assigns and transfers to Mortgagee all of its right, title and interest in and to Leases and all rentals, issues, proceeds and profits now due and which may hereafter become due ***."

Similarly, the collateral assignment of rents provided that the debtors

"transfer and set over unto [Travelers] *** all of the rents, earnings, income, issues and profits now due and which may hereafter become due, payable or collectable."

Finally, Travelers' UCC-1 and UCC-2 financing statements each stated that Travelers' security covered all "income, rents, issues, and profits arising from the operation of the Land and Improvements."

Travelers filed its mortgage and rent assignments with the Cook County recorder of deeds on December 2, 1985. It filed its UCC-2 financing statement on December 12, 1985. It filed its UCC-1 financing statement with the Illinois Secretary of State on February 20, 1986. However, Travelers did not file a UCC-3 continuation statement within the requisite five-year period. See Ill. Rev. Stat. 1989, ch. 26, par. 9—403.

On September 18, 1986, FNBBI lent the debtors approximately $2 million, and entered into a written loan and security agreement with them, which was periodically renewed. At the time FNBBI filed its summary judgment motion, debtors owed FNBBI $581,028.80. The security agreement granted FNBBI a security interest in the following property of the debtors:

"all present and hereafter acquired or created *inventories of goods and supplies held for sale or for use* in debtor's business, fixtures and *all accounts, accounts receivable.*" (Emphasis added.)

FNBBI's UCC-1 financing statement listed the same.

FNBBI filed its UCC-1 financing statement with the Illinois Secretary of State on September 22, 1986, and filed a UCC-3 continuation statement on June 25, 1991.

Travelers filed this action on March 8, 1989, to foreclose its mortgage. The initial complaint did not name FNBBI as a defendant. FNBBI filed a motion for leave to file an intervening petition on February 7, 1990, which the circuit court granted.

On May 9, 1991, FNBBI filed a counterclaim and cross-claim asserting that FNBBI has a well-perfected first priority security interest, superior to any interest of Travelers, in all of the debtors' personal property including the hotel's revenues. The hotel revenues consisted of funds received in payment for hotel rooms, as well as other services provided by the hotel, such as restaurants, bar, maid service, and room service.

On May 28, 1991, FNBBI filed a motion for summary judgment, claiming that its security interests took priority because Travelers' purported security interests were invalid and/or unperfected. Specifically, FNBBI argued that Travelers had no well-perfected security interest in the collateral because (1) hotel revenues are properly characterized as personal property, such that perfection of a security interest in hotel revenues is governed by the UCC and not by real estate recording statutes and (2) because, a UCC financing statement which Travelers filed with the Secretary of State was ineffective because it failed to adequately describe the collateral and because Travelers had allowed it to lapse by failing to file a continuation statement within five years.

On July 2, 1991, Travelers filed a cross-motion for summary judgment. Travelers asserted that (1) hotel revenues are properly characterized as "rents," rather than as personal property and thus Travelers' recording of its loan documents pursuant to Illinois real estate law perfected a security interest in the hotel revenues; and (2) that Travelers' financing statement adequately described the collateral, and did not lapse, despite the fact that five years passed and no continuation of the financing statement was filed.

In an order dated September 26, 1991, after a hearing, the circuit court denied FNBBI's motion and granted Travelers' cross-motion for summary judgment. The court found that: (1) the recording of Travelers' mortgage and collateral assignment of rents created a valid first priority security interest in the hotel revenues as the revenues were properly characterized as rent, not personal property; (2) Travelers' UCC-1 financing statement also properly perfected a first priority security interest in the revenues and other personal property of the debtors and had not lapsed; and (3) FNBBI's UCC-1 financing statement, which covered the hotel's "accounts" and "accounts receivable," failed to properly perfect an interest in the hotel revenues.

### DECISION
In this case, the primary issue raised by the parties' summary judgment motions is the priority of the parties' respective security in-

terests. This is a question of law. (See *Hatton v. Money Lenders & Associates, Ltd.* (1984), 127 Ill. App. 3d 577, 582, 469 N.E.2d 360, 365.) Summary judgment is particularly appropriate where, as here, all parties file for summary judgment. *In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 540, 510 N.E.2d 1057, 1059.

This court reviews a circuit court's resolution of disputed questions of law *de novo*, and, therefore, the circuit court's decision regarding legal issues is accorded no deference. See *In re Marriage of Skinner* (1986), 149 Ill. App. 3d 788, 791, 501 N.E.2d 311, 313; *Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 833, 458 N.E.2d 998, 1000.

The characterization of hotel receipts as real or personal property determines how an interest in hotel receipts is perfected. If hotel receipts constitute an interest in realty, they are not governed by the Uniform Commercial Code, which relates only to interests in personalty, and need be perfected only by filing in the Cook County recorder of deeds office. See Ill. Rev. Stat. 1991, ch. 26, par. 9—104(j) (Uniform Commercial Code does not apply to "the creation of or transfer of an interest in or lien on real estate, including a lease or rents thereunder").

FNBBI contends that the great weight of authority and substantial public policy concerns demonstrate that the court erred in finding that hotel revenues are real property.

We disagree.

An analysis of existing law and public policy considerations demonstrates that the court in this case correctly held that hotel receipts are "rents" and an interest in realty and that Travelers properly perfected its interest in those receipts through recording its interest with the office of the Cook County recorder of deeds.

The brief of FNBBI cites an Oklahoma bankruptcy case which holds that, in contrast to tenants, hotel guests are mere licensees who receive only a personal contract allowing them occupancy. *In re Greater Atlantic & Pacific Investment Group, Inc.* (N.D. Okla. 1988), 88 Bankr. 356, 359.

FNBBI also cites a California bankruptcy case which holds that, unlike rent, hotel fees constitute payment for a package of services as well as for a room. *In re Ashkenazy Enterprise, Inc.* (C.D. Cal. 1986), 94 Bankr. 645, 647.

Indeed, FNBBI contends that one of the primary ways in which to distinguish tenants from hotel guests is through services which hotels offer. FNBBI also posits that a reversal of the court's ruling

would further uniformity, clarity, and certainty in Illinois commercial law.

The bankruptcy cases which FNBBI has cited in support of its contention do not have precedential value and we are unpersuaded by FNBBI's assertions.

The conclusion that room revenue is not rent generated by real property is counterintuitive. It is indisputable that the common understanding is that rent is compensation for use of property for shelter. Also, the commonly held view is that a hotel guest primarily seeks shelter not service. The court's finding conforms to the commonly held view.

Black's Law Dictionary defines "rent" as:

> "Consideration paid for use or occupancy of property. *** [C]ompensation or return of value given at stated times for the possession of lands and tenements corporeal." Black's Law Dictionary 1297 (6th Ed. 1990).

This definition affords no basis for distinguishing a tenant from a hotel guest in determining what is rent. Further, the reliance on the services provided by the owner of the building or rooms in a hotel for the distinction between a tenant and a hotel guest can become uselessly blurred as a high-class apartment building may offer more services than a low-class hotel. The validity of security agreements should not be contingent upon such vagaries as the length of occupancy or the extent of services provided. Revenues generated by the residential occupancy of real estate property should be "rents," without reference to term of occupancy or level of services. *In re S.F. Drake Hotel Associates* (N.D. Cal. 1991), 131 Bankr. 156, 159.

Illinois law alone governs the characterization of hotel receipts in Illinois. Property interests are created and defined by State law. *Butner v. United States* (1979), 440 U.S. 48, 54-55, 59 L. Ed. 2d 136, 141-42, 99 S. Ct. 914, 917-18.

In defining property, real or personal, judicial decisions should conform with laws enacted by the legislature. Relative to laws enacted by the legislature, the Illinois Hotel Operators' Occupation Tax Act defines "rent" as "consideration received for occupancy, valued in money, whether received in money or otherwise including all receipts, cash, credits and property or services of any kind or nature." (Ill. Rev. Stat. 1991, ch. 120, par. 481b.32(b).) The hotel operator's occupation tax is imposed upon "persons engaged in the business of renting, leasing or letting rooms in a hotel." (Ill. Rev. Stat. 1991, ch. 120, par. 481b.33(a).) We also note that section 2 of the Municipal Tax Compli-

ance Act refers to "rental" for occupancy of hotel or motel rooms. Ill. Rev. Stat. 1991, ch. 24, par. 1552.

The parties to this appeal have cited only one bankruptcy case in Illinois which has given consideration to whether hotel receipts in Illinois are characterized as real estate. *In re Schaumburg* (N.D. Ill. Jan. 12, 1989), No. 87B 14301.

In *Schaumburg*, the United States bankruptcy judge concluded that "the Hotel's" revenues fall within the general grant of a security interest in "all rentals, income, and profits" and that under Illinois law, all hotel receipts, including income from incidental services such as telephone and food and beverage service, are deemed to arise primarily from the hotel occupant's use of the underlying real estate and hence are an interest in real estate. *Schaumberg*, slip op. at ____.

The characterization of hotel receipts was considered in *Springfield Hotel-Motel Association v. City of Springfield* (1983), 119 Ill. App. 3d 753, 457 N.E.2d 1017. In this case, the court considered the City of Springfield's use of proceeds from a tax assessed on hotel room revenues. Under Springfield's home rule powers, revenue from taxes on the use of personal property could be used for general corporate purposes. In contrast, revenue from taxes on an occupation providing services could only be expended for a limited number of purposes. Thus, the court had to determine whether hotel room revenues derived from the use of property or from the providing of a service. The court found that the city's hotel tax was assessed on the use of property, not on the providing of a service. The court stated:

> "In the case of the rental of a hotel or motel room, it is our opinion that any service *** is only incidental to the use of the tangible property ***." *Springfield Hotel-Motel Association*, 119 Ill. App. 3d at 761.

The court's finding in this case that hotel receipts are "rent" conforms to provisions in the Illinois Hotel Operators' Occupation Tax Act (Ill. Rev. Stat. 1991, ch. 120, par. 481b.32(b)) and the Municipal Tax Compliance Act (Ill. Rev. Stat. 1991, ch. 24, par. 1552). The court's finding also conforms with the decision in *Springfield Hotel-Motel Association v. City of Springfield*, 119 Ill. App. 3d 753, 457 N.E.2d 1017. The court did not err.

We now hold that hotel receipts are "rents."

We also hold that Travelers perfected a first priority security interest in the hotel receipts through its action in recording the loan documents with the Cook County recorder of deeds. Thereafter, no further action by Travelers was necessary to perfect its security interest.

However, assuming, *arguendo*, that further action was necessary, the court correctly found that Travelers also has a properly perfected, first priority security agreement in all the remaining property located in or on the property, including but not limited to personal property, by virtue of the filing of its UCC-1 financing statement on February 20, 1986, and its underlying security documents which adequately described Travelers' security interest in the hotel receipts. Further, the UCC-1 financing statement which Travelers filed did not lapse by failure to file a UCC-3 continuation statement within the five years from February 20, 1986. Travelers' security interest did not lapse because the relative rights of the parties to the hotel receipts became fixed March 8, 1989, the date Travelers commenced this foreclosure action. See *Avant Petroleum, Inc. v. Banque Paribas* (1988), 853 F.2d 140.

The *Avant* case involved an interpleader action. The Federal Court of Appeals in *Avant* held that it was not necessary to file a continuation statement during the pendency of the lawsuit because rights of the parties had become fixed once the action had been commenced. The court wrote:

> "To allow the subsequent lapse of its perfections, due to its failure to file continuation statements, to divest *Paribas* of its superior interest in the funds would be to penalize it for the delay in collection that was forced on it by the initiation of a court proceeding. This would create the bizarre result that the very act of setting up the 'trust' in order to protect and reserve property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights to the property. Such an outcome is not only inequitable, but it is also inconsistent with the notion that the funds are held by the Court pending determination of the rightful owner at the time of the interpleader." *Avant*, 853 F.2d at 145.

The cogent rationale of *Avant* is alive and applies to this mortgage foreclosure case.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

MURRAY and McNULTY, JJ., concur.